UNITED STATES, Appellee

v

RICHARD L. McCARTHY, First Lieutenant, U. S. Army, Appellant

11 USCMA 758, 29 CMR 574

No. 13,950

Decided August 5, 1960

*First Lieutenant Robert D. Stiles* argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Colonel W. H. Blackmarr.*

*First Lieutenant Richard E. Wiley* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel James G. McConaughy* and *First Lieutenant George J. Miller.*

## Opinion of the Court

HOMER FERGUSON, Judge:

The accused was found guilty of larceny, in violation of Uniform Code of Military Justice, Article 121, 10 USC § 921, and false swearing, in violation of Code, supra, Article 134, 10 USC § 934. He was sentenced to dismissal and total forfeitures. Intermediate appellate authorities affirmed, and we granted review solely on the issue whether specification 1 of Charge II is sufficient to allege the offense of false swearing. Under our authority to notice plain error in order to avoid a miscarriage of justice, however, our examination of the record compels us also to reach the question of the sufficiency

of the evidence to establish accused's guilt of larceny. See Rules of Practice and Procedure, United States Court of Military Appeals, Rule 4.

Lieutenant McCarthy, in an off-duty status, entered a night club near his station at Fort Knox, Kentucky. There he found several enlisted members of his company and, upon invitation, joined them in a drink. Shortly afterwards, he indicated he was returning to Fort Knox. Privates Allman and Lindow, who were assigned to his company, asked him for a ride.

At the time, Lieutenant McCarthy was driving a Buick sedan, and the fact that it lacked hubcaps was a standing joke in the organization. Upon departing from the Galleries, Privates Lindow and Allman noticed another Buick in the parking area. They informed Lieutenant McCarthy they would get him some hubcaps. McCarthy advised the men "not to do it . . . [not] [t]o take the hub caps." He, however, did not make any "overt motion or physical act to stop" the men. While McCarthy remained in his car, Allman and Lindow proceeded to the nearby Buick, removed its hubcaps, and returned to the Lieutenant's vehicle. They placed the hubcaps in the rear seat, and the group drove away. En route to Fort Knox, they stopped at a restaurant. While there, one of the enlisted men received a telephone call. Thereafter, the three men left the restaurant and returned to McCarthy's automobile. Private Lindow removed the hubcaps from the rear seat and threw them over a nearby fence. They were subsequently retrieved and returned to the owner of the vehicle from which they had been originally taken.

On the following morning, Lieutenant McCarthy was interviewed by Chief Warrant Officer Stonewall J. Scott, an Army criminal investigator. Prior to his interrogation, he was fully advised of his rights under Code, supra, Article 31, 10 USC § 831, and informed that he was suspected of larceny of private property. In less than an hour, the accused executed a written sworn statement in which he declared the following:

"Q. Lt McCarthy, were you at the Galleries Bar in Pleasure Ridge, Kentucky, last night, 17 May 1959, around 2300 hours?
"A. Right.

"Q. Was anyone else with you?
"A. Yes sir. Pfc's Allman and Lindow from my unit.

"Q. Did either of you take four (4) hub caps from a 1957 Buick parked near the Galleries Bar?
"A. No sir.

"Q. When you left the Galleries Bar did you go to the Half Way House Bar?
"A. Yes sir.

"Q. Did any girls accompany you?
"A. No sir.

"Q. Did either you or the other men with you receive a telephone call from a girl at the Galleries Bar while at the half Way House Bar?
"A. That I don't know. I know I did not receive a call and I don't know if either of them did.

"Q. *Do you have any knowledge of the hub caps at all?*
"A. *No sir.*

"Q. Do you have anything to add to your statement that I have not covered?
"A. No sir." [Emphasis supplied.]

Thereafter, he was, as noted above, brought to trial upon charges of larceny of the hubcaps and falsely denying under oath any knowledge of the theft.

I

The specification purporting to allege the offense of false swearing avers that the accused:

". . . [D]id, . . . on or about 18 May 1959 in an official investigation conducted by Criminal Investigator S. J. Scott, US Army, of larceny of automobile hub caps on 17 May 1959 property of Samuel M. Corbin, wrongfully and unlawfully make and subscribe under lawful oath, a statement in substance as follows: 'I have no knowledge of the hub caps at all,' which statement he did not then believe to be true."

In United States v Smith, 9 USCMA 236, 26 CMR 16, we pointed out that the offense of false swearing consists of the knowledgeable making of *a false statement,* under oath, in other than judicial proceedings. We reiterated that holding in United States v Claypool, 10 USCMA 302, 27 CMR 376. The difficulty with the pleading before us is that, while it alleges that Lieutenant McCarthy did not believe his statement to be true, it nowhere avers that the declaration to Investigator Scott was false.

By definition, the statement involved in charges of false swearing must be in fact false, and if that element of the offense cannot be found expressly or impliedly alleged within the four corners of the specification, the latter must be held to set forth no offense. United States v McCall, 11 USCMA 270, 29 CMR 86; United States v Mamaluy, 10 USCMA 102, 27 CMR 176. It is clear that the count before us contains no express averment that the statement was false. It is equally certain that the statement's falsity is not impliedly alleged.

In Hilliard v United States, 24 F2d 99 (CA 5th Cir) (1928), the defendant was convicted of perjury upon an indictment which set forth certain testimony given by him and alleged that " 'he then and there well knew that the answers given . . . were false and untrue.' " In holding the indictment insufficient, Circuit Judge Foster stated:

". . . It is essential, in charging perjury, that the indictment shall clearly set out wherein the witness has sworn falsely, and this is of the gist of the offense and an essential element to support a conviction." [Hilliard v United States, supra, at page 100.]

See also United States v Otto, 54 F2d 277 (CA 2d Cir) (1931), and United States v Hiss, 185 F2d 822 (CA 2d Cir) (1950).

As in perjury, the truly essential element of false swearing is that the declarant's statement under oath be false, *i.e.,* contrary to his oath. United States v Smith, United States v Claypool, both supra. Here, that element is not expressly set out, and it is not impliedly averred by the allegation that accused did not then believe his statement to be true. Hilliard v United States, supra. That portion of the count does no more than negate the defense of honest belief in the accuracy of the statement involved. Accordingly, the specification before us is insufficient to allege the offense of false swearing and cannot properly serve as a predicate for findings of guilty.

II

The question upon which we did not grant but which we, in the interest of justice, nevertheless believe we must resolve is whether the evidence is sufficient to establish accused's guilt of larceny of the hubcaps.

The theory upon which the accused was tried, found guilty, and the findings approved below is that he became a principal to the theft accomplished by Allman and Lindow by encouraging them to commit the offense. This, it is said, resulted from his failure, as their immediate commanding officer, to interfere with their proposed scheme and either to order them not to steal the hubcaps or to take such other steps as might reasonably be required to prevent the theft or to secure the apprehension of the thieves.

In order to be a principal to an offense, it is not sufficient to demonstrate mere presence at the scene of the crime. Code, supra, Article 77, 10 USC § 877; Manual for Courts-Martial, United States, 1951, paragraph 156; United States v Guest, 3 USCMA 147, 11 CMR 147; United States v Jacobs, 1 USCMA 209, 2 CMR 115. There must be some action on the part of the aider and abettor which encourages or assists the active perpetrators and there must be a showing of a common purpose to accomplish the criminal design. United States v Lyons, 11 USCMA 68, 28 CMR 292.

In United States v Johnson, 6 USCMA 20, 19 CMR 146, we were confronted with findings of guilt of assault supported only by evidence that accused was initially present as a member of a group, one of whom struck the victim, but thereafter fled the scene. We unanimously reversed for insufficiency of the evidence to establish accused's connection with the assault, pointing out that mere presence at the scene and flight therefrom did not establish accused's participation as a principal. In United States v Jackson, 6 USCMA 193, 19 CMR 319, we stated at page 201:

"The law of aider and abettor is not a dragnet theory of complicity. *Mere inactive presence at the scene of the crime does not establish guilt. . . . Neither does later approval of the act supply a ground for conviction. . . . The law requires concert of purpose or the aiding or encouraging of the perpetrator of the offense and a conscious sharing of his criminal intent."* [Emphasis supplied.]

And in United States v Lyons, supra, we held that acceptance of a bribe "to see nothing" by a sentinel from an active participant in larceny was insufficient to establish the accused's "conscious sharing of the alleged intent of the co-actors," when he was not otherwise informed of the purpose of the bribe or of the planned thefts. United States v Lyons, supra, at page 71. Finally, in United States v Schreiber, 5 USCMA 602, 18 CMR 226, we noted at page 609, that the failure of air policemen to act, in accordance with their duty, to prevent a homicide did not render them principals in the homicide but constituted them, at most, only accessories after the fact.

Bearing these principles in mind and turning to the evidence in the record before us, we are required to conclude that the proof is insufficient in law to sustain the findings of guilty of larceny. Lieutenant McCarthy's presence on the scene is not enough to show any concert of action with Lindow and Allman. Surely, his advice that they not steal the hubcaps militates against any inference that he joined in their design and, as was pointed out in United States v Schreiber, supra, his failure to take affirmative measures to prevent the commission of the larceny does not in any way establish guilt as a principal. In like manner, the fact that Allman, Lindow, and the hubcaps left the scene in McCarthy's car offers scant support to the Government. The arrangement for the ride to Fort Knox had been completed before the plan to steal was broached and to hold that McCarthy's subsequent transportation of the thieves and the hubcaps establishes his participation in the theft converts mere continued inactive presence at the scene into a positive sharing in the felonious conduct charged. While such may have rendered him an accessory after the fact, it is little more than another way of saying that accused's nonfeasance is sufficient to allow an inference that he joined in the criminal purpose of Allman and his confederate. See United States v Schreiber, supra.

In sum, we conclude that the mere failure of an officer to take active measures to prevent the commission of an offense in his presence does not permit the inference that he shared the criminal design of the actual perpetrators. Whether it may constitute some other offense under Code, we need not now decide. Suffice it to say that we are not willing to permit findings of guilty of larceny to rest upon a mere failure of the accused to interfere with the conduct of his subordinates under the circumstances here depicted. To hold otherwise would require us to conclude that a policeman who merely observes the commission of a crime and does not intervene thereby becomes a coparticipant if the actual criminals know they are being observed and do not permit that fact to deter them.

The decision of the board of review is reversed. The charges are ordered dismissed.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

I cannot agree that the specification

purporting to allege false swearing fails to state an offense. Without belaboring the point, I invite attention to the following discussion of false swearing quoted from paragraph 213d (4) of the Manual for Courts-Martial, United States, 1951:

"False swearing is the making under lawful oath of any statement, oral or written, not believing the statement to be true."

Certainly the specification found wanting by my brothers conforms to that definition. Likewise, insofar as false swearing may be analogized to perjury, I am unable to perceive any deficiency in the allegation with which we are concerned. Paragraph 210 of the Manual has this to say about perjury:

"The false testimony must be willfully and corruptly given; that is, it must appear that the accused did not believe it to be true. A witness may commit perjury by testifying that he knows a thing to be true when in fact he either knows nothing about it at all or is not sure about it, and this is so whether the thing is true or false in fact."

Furthermore, the above-quoted statements are in harmony with the Federal perjury statute. Section 1621 of Title 18, United States Code, provides that:

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, . . ."

In United States v Debrow, 346 US 374, 98 L ed 92, 74 S Ct 113 (1953), the Supreme Court considered the sufficiency of indictments to charge an offense in violation of 18 USC § 1621, supra. The indictments averred pertinently that, having been duly sworn before a competent tribunal inquiring into a matter there pending in which the law authorizes administration of an oath that he would testify truly, the defendant "did unlawfully, knowingly and wilfully, and contrary to said oath, state a material matter which he did not believe to be true." It will be seen that those allegations are, insofar as we are here concerned, almost identical to the one in the case at bar. The lower courts had sustained motions to dismiss, but the Supreme Court reversed, holding:

"The essential elements of the crime of perjury as defined in 18 USC § 1621 are (1) an oath authorized by a law of the United States, (2) taken before a competent tribunal, officer or person, and (3) a false statement wilfully made as to facts material to the hearing. The indictments allege that the subcommittee of the Senate was a competent tribunal, pursuing matters properly before it, that in such proceeding it was authorized by a law of the United States to administer oaths, and that each defendant duly took an oath before such competent tribunal and wilfully testified falsely as to material facts.

". . . Therefore, all the essential elements of the offense of perjury were alleged.

  .   .   .   .   .

"The indictments were sufficient, and the dismissal thereof was error."

Manifestly, that which one does not believe to be true is false insofar as the person making such a statement is concerned, and obviously contravenes his oath to speak truthfully. That, I believe, is the gist of the offense. In fact, contrary to their holding, my associates seem to agree this is so, stating:

". . . the truly essential element of false swearing is that the declarant's statement under oath be false, *i.e., contrary to his oath.*" [Emphasis supplied.]

Therefore, I am unable to join in overturning accused's conviction for false swearing.

Even more difficult for me to accept, however, is the Court's reversal of the

larceny finding. Particularly is that so in view of the fact that accused contended in his petition that the evidence was legally insufficient to support that finding and we declined to grant review of that assignment of error. Certainly it is somewhat surprising that my associates, having previously rejected the argument, now and without the benefit of either briefs or argument, set aside this conviction. And their action is even more startling in view of the sound basis that exists in law to support the finding.

When all evidence adverse to an accused, and the permissible inferences therefrom, are ignored and only the evidence favorable to the defense is marshalled and set forth in its best light, I suppose a case can be made for reversing any conviction for want of proof. That, however, has never been and is not the proper measuring rod.

True it is that mere inactive presence at the scene of a crime will not support a conviction. In the case at bar, however, it was for the court members to decide whether they believe accused had told his companions not to steal the hubcaps. And, even were they to accept the exculpatory testimony that he had so admonished them, again it was the province of the triers of fact to determine whether the accused's words were in a serious vein and whether his actions belied his words. Apart from the testimony of those implicated in the larceny, the record contains evidence from a sergeant who witnessed the theft and watched the accused and his companions drive off in his car with the loot. The accused was apprised of the theft and kept his car available and in readiness to drive away with the loot. Also, it is of interest that the fruit of the larceny was hubcaps, which his car lacked, and which, inasmuch as they were taken from another Buick automobile, could eliminate that void and save the accused the cost of replacements. Furthermore, it is to be noted that, when questioned about his knowledge of the matter, accused lied, saying he knew nothing about it, thus evidencing a guilty mind. With the record in that posture, I am unable to agree that the evidence will support no more than a finding of inactive presence. Quite to the contrary, I am sure the court-martial could, under proper instructions, fairly conclude that accused consciously shared in the criminal intent and encouraged the theft.

There is, however, yet another ground upon which accused's participation as a principal may be rested. He was the commanding officer of the men who admittedly were guilty, and he could not but have been aware of the commission of the crime. Nevertheless, he took no measures to prevent its perpetration, he failed to apprehend the thieves, and he did not report the offense. Rather, he transported the hubcaps, which were stolen for his benefit, away from the scene of the theft and sought to mislead the investigator by false statements.

Article 7(b), Uniform Code of Military Justice, 10 USC § 807, provides that all persons authorized under regulations to apprehend individuals subject to military law "may do so upon reasonable belief that an offense has been committed and that the person apprehended committed it." Pursuant to paragraph 19a, Manual for Courts-Martial, United States, 1951, all officers are vested with the authority to apprehend. Under those circumstances, as I understand the law, the court-martial could properly have convicted accused of larceny as a principal.

Miller, Criminal Law (Hornbook Series) (1934), states the rule as follows in § 75(b), at page 231:

". . . Mere presence and neglect to endeavor to prevent a felony will not of itself make one a principal . . . unless there be a duty upon the part of the accused to interfere and attempt to prevent the felony; and this is true even though the person so present is to be benefited by the deed."

That same concept is set forth in paragraph 156, Manual for Courts-Martial, United States, 1951, as follows:

"While merely witnessing a crime without intervention does not make

a person a party to its commission, if he had a duty to interfere and his noninterference was designed by him to operate and did operate as an encouragement to or protection of the perpetrator, he is a principal."

And that principal was long ago approved in Federal case law. See, for example, Powell v United States, 2 F2d 47 (CA 4th Cir) (1924). There, a train conductor's conviction under the theory of aider and abettor for transporting intoxicating beverages in violation of the Volstead Act was upheld. Significantly, the court made reference to the fact that as a conductor he should have seen the laws were observed on his train, "especially as by the law of the state he was clothed with powers of a special policeman, with full authority to make arrests for offenses committed in his presence."

Manifestly, there was adequate basis upon which the court-martial could predicate a finding that accused aided and abetted the larceny of the hubcaps. And, indeed, the law officer gave a full and accurate charge on the law of aider and abettor, including a specific instruction that, "Mere presence at the scene of a crime is not enough to constitute the person who is merely present an aider and an abettor." No claim is advanced that he misstated the law. The finders of fact at all levels have, under the correct test, been convinced of accused's guilt by the evidence and permissible inferences flowing therefrom, and for the reasons I have stated, I conclude it is ample to support accused's conviction. Accordingly, I believe it is improper to dismiss the larceny offense.

I would affirm the decision of the board of review.