UNITED STATES, Appellee

v

BOBBY J. CHANEY, Airman Basic, U. S. Air Force, Appellant

12 USCMA 378, 30 CMR 378

No. 14,698

Decided April 28, 1961

*Captain Hugh J. Dolan* argued the cause for Appellant, Accused. With him on the brief was *Colonel James L. Kilgore.*

378

*Captain Donald W. Brewer* argued the cause for Appellee, United States. With him on the brief was *Colonel Merlin W. Baker.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A general court-martial convened at Dreux Air Base, France, convicted the accused of a charge of perjury, in violation of Article 131, Uniform Code of Military Justice, 10 USC § 931, and imposed a sentence which included a bad-conduct discharge. A board of review set aside the findings of guilty of three of the four false statements set out in the specification, and modified the sentence by reducing the period of confinement and the forfeitures. The Judge Advocate General of the Air Force certified the record of trial to this Court to review the decision of the board of review on several grounds, and the accused petitioned for review on others. We denied the petition for review and have before us only the certified questions, the first of which is whether the specification alleges a violation of Article 131. The specification reads in pertinent part as follows:

"In that . . . [the accused] having taken a lawful oath in a trial by special court-martial of . . . Avery and . . . Cassady that he would testify truly, did . . . willfully, corruptly, and contrary to such oath, testify in substance as follows: that . . . Avery and . . . Cassady did not drink beer in the barracks on 8 March 1960 . . . which testimony was upon material matters and which he did not then believe to be true."

The language of the specification follows closely that of Article 131, which defines the offense of per-
 ▊ jury.[1] It is exactly like the
 ▊ form of specification provided in the Manual for Courts-Martial, United States, 1951, appendix 6*b*, form 105. A specification which follows the language of the statute defining the offense, and the form of specification prescribed therefor, is legally sufficient. United States v Bunch, 3 USCMA 186, 11 CMR 186; United States v Rios, 4 USCMA 203, 15 CMR 203; see also Flynn v United States, 172 F2d 12 (CA 9th Cir) (1949); McDonough v United States, 227 F2d 402, 404 (CA 10th Cir) (1955). Accordingly, we answer the first certified question in the affirmative.

Consideration of the remaining questions requires a statement of some of the evidence and reference to some of the proceedings below. On March 8, 1960, the accused was at the Airmen's Club at Dreux Air Base. He remained there about six hours drinking liquor. At about 11:15 p.m. he returned to his barracks with Avery and Cassady. He took with him a case of beer. The group went to the accused's room where they were joined by Airman Inman. Also present was Airman Rutherford, who was an occupant of the room. A short time later Avery left. Immediately thereafter, noises were heard from the hallway. Apparently recognizing the significance of these noises, Rutherford left the room to go to another airman's room, and Inman left through the window. A few minutes later, they saw the squadron's "chain of command" board, which was usually attached to the wall in the hallway, disappear into the accused's room. The board was a 4 x 7 plywood case with a glass cover. The next morning it was found off the base. An investigation led to the filing of charges against Avery and Cassady, including alleged violations of an order prohibiting consumption of alcohol in the barracks, and the willful and unauthorized destruction of the chain of command board. They were brought to trial before a special court-martial. The accused testified at that trial as a defense witness.

---

[1] "Any person subject to this chapter who in a judicial proceeding or in a course of justice willfully and corruptly gives, upon a lawful oath or in any form allowed by law to be substituted for an oath, any false testimony material to the issue or matter of inquiry is guilty of perjury and shall be punished as a court-martial may direct."

Among other things, he said Avery and Cassady did not drink in his room. However, both defendants were convicted.[2] Thereafter, the present charge of perjury was filed against the accused.

Inman and Rutherford appeared as Government witnesses. Both testified to their presence in the room with the accused, Avery and Cassady. On the critical issue of whether Avery and Cassady drank beer while there, Inman's testimony was vacillating. At one point he said "we all had beer," but later he maintained he could not "say for sure whether they all took a drink." In his opinion the accused was "feeling pretty good." Rutherford testified he "actually" saw Avery and Cassady drink beer while in the accused's room, but he would not "say for sure" whether the accused was in a position to see them at the time. In his opinion the accused was "drunk." The prosecution also introduced excerpts from the accused's testimony at the Avery and Cassady trial. In material part the testimony is as follows:

"Q [DC] All right. Will you tell the court, in your own words, the story of you people in the barracks that night, late that night, March eighth, and tell particularly about Cassady and Avery. Tell the court, in your own words, what happened.

"A Well, we went to the Airmen's Club—Airman Cassady and Airman Avery and I—and were drinking at the Club. And then about eleven-fifteen, I bought a case of beer and I brought it back. Well, I carried the beer into my room and put it down by my bunk. Airman Avery and Airman Cassady and Airman Quarlena came in the room with me. Airman Avery and Airman Cassady didn't drink beer, nor did Airman Quarlena drink any of the beer.

. . . . . . .

"Q All right. Now, who drank this beer?

"A Airman Rutherford and I.

"Q Did Airman Quarlena or Cassady or Avery drink any of it?

"A No, sir.

. . . . . . .

"Q I see. Now, how long did you stay in the room?

"A I stayed in the room that night; and about eleven twenty-five, Airman Quarlena left the room; and Avery, Cassady, Rutherford and I sat around still talking. About eleven forty-five, Avery and Cassady went to their room. They sleep upstairs. They left the room and they went upstairs. And Airman Rutherford went to his bed.

. . . . . . .

"Q [TC] Were you thinking pretty clearly after those twenty drinks [at the Airmen's Club]?

"A Yes, sir.

"Q And you brought a case of beer home. Right?

"A Right.

"Q Will you tell us why?

"A We wanted some more drinks.

"Q I see. The Club was closing and you wanted some more drinks? And you want the court to believe that you were going to hog all this beer for yourself, is that right? You never gave Avery and Cassady any of it?

"A They didn't want any.

. . . . . . .

"Q Do you remember that you are under oath, Airman Chaney?

"A Yes, sir.

"Q And you will tell the truth, is that right? (Witness nodded affirmatively).

. . . . . . .

"Q But you do know that Airman Avery and Airman Cassady were sitting on your bed having a nice conversation until 2345, do you?

"A Right.

"Q Your memory is crystal-clear on that point, isn't it?

"A Yes."

The defense case consisted of testimony to the effect that Rutherford did not have a good reputation for truthfulness, whereas the accused was "trustworthy" and "a very dependable

---

[2] The willful destruction charge was later disapproved by the general court-martial authority.

worker." No direct evidence was presented concerning the accused's state of mind at the time he testified at the Avery-Cassady trial. In an out-of-court hearing, however, defense counsel requested an instruction on the effect of the evidence of the accused's intoxication on the night of the incident in his room. The request reads as follows:

"Although perjury does not require a specific intent to deceive, it does require a lack of honest belief in the truthfulness of the testimony given and an element of willfulness and each of these elements may be negated by partial mental impairment."

In support of his request, defense counsel said that he did not know "how it should be stated," but he believed that the accused's intoxication on the night of the incident "would certainly lessen" the accused's faculty to observe and "also lessen" his ability to recollect what he observed. The law officer indicated he did not see any issue of intoxication as regards the accused's "mental impairment," but he would instruct the court-martial on "mistake of fact." Both counsel commented on the evidence in their final arguments. In his opening argument trial counsel contended it perhaps might be inferred from the evidence of intoxication that the accused was "so drunk he did not see" what went on in his room. To show the fallacy of the inference, he drew attention to the direct and unequivocal nature of the accused's testimony in the Avery-Cassady trial. Defense counsel argued the point at greater length. He said:

". . . [O]ne of the things the trial counsel has emphasized and that I am sure and certain he is going to hammer on when I am through is the . . . emphatic character of Airman Chaney's testimony. . . . There has been something about words like, 'I don't think so,' 'In my opinion', 'To the best of my knowledge,' That is; understood by any witness or layman on the stand. When he says it did not happen, he means by his faculties, by all that is holy, it did not happen. He does not

spew open like an oracle or a delphi and have a court concede it is impossible. This might have happened. This boy says, 'I did not see him,' 'They did not have any,' 'As I recollect.' . . . Is he testifying without any earnest belief in the truth of his testimony? How far has he engineered this thing? Is this a monster here, a boy who carefully planned this? 'Did Rutherford have anything to drink?' 'No.' 'Did Inman have anything to drink?' 'I believe he did not.' He did not say, 'I did not see him.' No. He did not make that needless preface to his comment. . . . 'Were you thinking pretty clearly?' 'Yes.' Under what circumstances was that reply given? . . . What would the matter of the question asked mean to a 20-year old kid? We cannot see this now from a perusal of the record of trial. It is going to be made a big thing by the trial counsel. Now, he says, 'Were you thinking clearly, pretty clearly?' 'Yes, sir.' 'Yes, sir. I was thinking pretty clearly.' And this is the pivotal statement of the master mind of Airman Basic Chaney. He is out to deceive this court. He is willfully, corruptly, giving [sic] false testimony. He testified as to how many drinks he had, 15 or 20 or more drinks. It was Old Granddad night over at the club. All liquor was ten cents. 'I had 15 or 20.' Now has he got a diabolical plot to defy a court? If there is one, he is pretty obviously going to say, 'Well, I did not have too many.'"

At the appropriate time the law officer instructed the court-martial on the elements of the offense and the applicable rules of law. No separate instruction was given on the accused's honest belief in the truth of what he testified to at the Avery trial, but, in the enumeration of the elements of the offense, the law officer advised the court-martial it must find beyond a reasonable doubt that the accused's testimony "was false and was willfully and corruptly given; that is, that the accused did not believe it to be true." At the end of the instruction the law officer called defense counsel's attention to the fact he had

**381**

"not given an instruction which . . . [he] indicated to . . . [counsel] that . . . [he] would." Defense counsel said he had no objection to the instructions as given, and no request for further instructions. The case went to the court-martial, and it returned findings of guilty.

When the record of trial came before the board of review, appellate defense counsel assigned a number of errors. Among these was one alleging that the law officer failed to instruct adequately on the effect of intoxication and the defense of mistake of fact. In opposition, the Government relied upon the staff judge advocate's discussion of the issues in his thorough post-trial review. The staff judge advocate pointed out there was no issue of the accused's mental impairment raised by the evidence of the accused's intoxication either as to the events in his room or as to the accused's testimony at the Avery trial. He also discussed the necessity of a separate instruction on mistake of fact. He pointed out that the law officer had instructed the court-martial it must believe beyond a reasonable doubt that the accused testified "willfully and corruptly." He concluded that "implicit" in the court-martial's findings of guilty in accordance with this instruction was a finding the accused did not believe the testimony he gave at the Avery trial was true.

The board of review analyzed the defense requested instruction, and the assignment of error predicated upon it. It concluded that no instruction on mistake of fact or intoxication was necessary. In support of its conclusion, it referred to a statement in paragraph 210 of the Manual for Courts-Martial that a witness can commit perjury "by testifying that he knows a thing to be true when in fact he either knows nothing about it at all or is not sure about it, and this is so whether the thing is true or false in fact." The board of review reasoned that if the accused lacked knowledge of the incident because of his intoxication, then at the Avery trial he testified to matters about which he knew nothing and was, therefore, guilty of perjury. "This would be equally true," the board of review added, "even

**382**

if the evidence showed as a matter of fact that Avery and Cassady did not consume any beer during the evening in question." The second certified question asks whether the board of review is correct in this statement. The third certified question asks whether the board of review is correct in saying, as it did immediately after the remark quoted above, that "[i]ntoxication existing at the time of an event cannot be a defense to unqualified testimony about the event given before a court-martial at a later date."

Government counsel maintain it is unnecessary to reach the second certified question. For a different reason we agree, not only as to that question but also as to the third certified question. The specific issue before the board of review was whether the law officer erred in refusing to give the instruction requested by defense counsel and an instruction on mistake of fact. It decided no such instructions were necessary. The correctness of its decision is the subject of the fourth certified question. The answer to that question is, therefore, dispositive of the case. Appropriately, we can pass over the second and third questions as intermediate issues. Cf. United States v Fisher, 7 USCMA 270, 273, 274, 22 CMR 60.

Intoxication may so impair the mental processes as to prevent a person from entertaining a particular intent or reaching a specific state of mind. United States v Simmons, 1 USCMA 691, 696, 5 CMR 119. The intent or state of mind is that required for the offense charged. Since the offense charged here is perjury, and that offense was allegedly committed by the accused when he testified in the Avery-Cassady trial, it necessarily follows that intoxication at an earlier time is immaterial. There being no evidence whatever that the accused was intoxicated at the time he testified, there was no issue of mental impairment, and the law officer's ruling was entirely correct. United States v Lacy, 10 USCMA 164, 27 CMR 238.

That brings us to what the staff judge

advocate described in the post-trial review as the defense "theory of mistake of fact." Putting aside possible waiver or abandonment of the issue by the failure to object after defense counsel's attention was specifically called to the omission, we turn to the defense argument that the accused's intoxication at the time he saw the events about which he testified, is a proper matter for the court-martial's consideration in determining whether he "willfully and corruptly" testified falsely. Heavy reliance is put on Lyle v State, 31 Tex Crim 103, 19 SW 903 (overruled in Evers v State, 31 Tex Crim 318, 20 SW 744, on the ground that a state statute expressly provided that intoxication was not a defense; see also Clinton v State, 132 Tex Crim 303, 104 SW 2d 39, 42). In that case there was evidence the accused was intoxicated both at the time of the event to which he testified, and at the time he testified before the grand jury. The appellate court reversed his conviction for perjury before the grand jury on the ground that an instruction should have been given on the effect of the defendant's intoxication. It divided, however, on which intoxication was important. One judge considered only the intoxication at the time the defendant testified. The author of the principal opinion advanced that view, but he also considered the effect of intoxication at the time of the events. In part, he said:

". . . There is evidence tending to prove that, when the game was played, defendant was present, but drunk. The court should have instructed the jury that they might consider this evidence, with all other testimony in the case, for the purpose of determining whether the defendant . . . remembered having seen the game played, if in fact he did see it."

Even under the *Lyle* dictum, intoxication at the time of the event is important only as it relates to the ability to see and recall what transpired. This was the point emphasized by defense counsel. It is the basis for his argument that the accused may have testified contrary to the actual fact, but he was honest rather than corrupt in his testimony, since what he testified to accorded with the best of his ability to recall. The essence of this idea is embraced in the instruction to the court-martial that it must find beyond a reasonable doubt that the accused did not believe his testimony to be true. As we pointed out in United States v McCarthy, 11 USCMA 758, 761, 29 CMR 574, a statement that the accused did not believe his testimony to be true "negate[s] the defense of honest belief in the accuracy of the statement involved." Thus, the substance of the defense position was specifically included in the instructions given. Accordingly, we answer the fourth certified question in the affirmative.

The decision of the board of review is affirmed.

Judge LATIMER concurs in the result.

FERGUSON, Judge (concurring in part and dissenting in part):

I concur in part and dissent in part.

I have no disposition to disagree with the Chief Judge's conclusion that the specification here involved properly alleges the offense of perjury. It avers that the accused:

". . . [H]aving taken a lawful oath in a trial by special court-martial of . . . Avery and . . . Cassady that he would testify truly, did . . . willfully, corruptly, and contrary to such oath, testify in substance as follows: that . . . Avery and . . . Cassady did not drink beer in the barracks on 8 March 1960 . . . which testimony was upon material matters and which he did not then believe to be true." [Emphasis supplied.]

In United States v McCarthy, 11 USCMA 758, 29 CMR 574, we pointed out that the truly essential element of perjury and false swearing "is that the declarant's statement under oath be false, *i.e.*, contrary to his oath." We went on to say, at page 761, that that element of the offense was not, in the specification then before us, either expressly or impliedly pleaded. Therefore, we set aside Lieutenant McCarthy's conviction of false swearing.

Here, however, the specification alleges that accused took an oath to "testify truly" and "contrary to such oath" related certain matters set forth in the count. The obvious implication of the quoted averments is that accused testified falsely for in no other way could he testify contrary to his sworn obligation to tell the truth. Indeed, the phrase "contrary to such oath" is commonly used to denote falsity in perjury indictments. Sharron v United States, 11 F 2d 689 (CA 2d Cir) (1926); United States v Hiss, 185 F2d 822 (CA 2d Cir) (1950); United States v Debrow, 346 US 374, 98 L ed 92, 74 S Ct 113 (1953).

I also agree with the Chief Judge that we need not answer the second and third certified questions which involve no more than hypothetical issues constructed upon portions of the board's written rationale. Compare United States v Higbie, 12 USCMA 298, 30 CMR 298, wherein we pointed out that factors considered by a board of review "may not be dissected out in order to have us pass upon a certified issue, the answer to which cannot affect the board's ultimate decision." My point of departure from the views of my brothers lies in their answer to the issue whether proper instructions were given on the issue of mistake of fact.

The evidence in the record before us demonstrates that, on the evening he is alleged to have observed the facts concerning which he has been found to have testified falsely, accused was intoxicated. He had consumed fifteen or twenty drinks of whiskey and several cans of beer. In the opinion of one witness who saw him at the barracks that night, accused was drunk. Nevertheless, he testified positively that Avery and Cassady, two of his friends, had not drunk any beer from a case which he had purchased and carried back to his quarters.

With the evidence in this posture, the defense counsel requested an instruction concerning the possible effects of intoxication with respect to the charge of perjury. After some discussion, it was agreed by the law officer and counsel that the court-martial would be advised of the effect of accused's drunkenness upon his power of recollection and honest belief that he had not observed Avery and Cassady drinking beer in the barracks. That issue subsequently formed the basis of the final arguments to the court. Thereafter, the law officer advised the court-martial of the elements of the offense, stating *inter alia,* that it must find that accused's testimony "was false and was willfully and corruptly given; that is, that the accused did not believe it to be true."

Thereafter, the law officer called counsel's attention to the fact that he had not given the proposed instruction on mistake of fact, and defense counsel replied that he had no objection to the advice as given and requested no further instructions.

As is noted in the principal opinion, there is no doubt that intoxication may give rise to the defense of honest mistake in a perjury case, for it may so impair the mind that one may honestly believe he is recounting the truth when, because of his befuddled senses on the occasion of observing the matters which he is now relating, he actually is testifying falsely. Cf. United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Taylor, 5 USCMA 775, 19 CMR 71. In the *Taylor* case, the accused was charged with perjury, and the evidence raised an issue concerning whether he honestly believed his former testimony to be true. The law officer instructed that, in order to be a defense, accused's belief in his testimony must have been both honest and reasonable. A unanimous Court reversed and stated, at page 781:

". . . *Article 131 may not be extended to a situation in which an accused honestly believes his testimony to be true, although in fact his understanding is erroneous, or based on information which a reasonably prudent man would consider insufficient.* To so broaden the Article's scope would be to substitute mere negligence for the specific criminal intent required by the statute which defines the crime of perjury." [Emphasis supplied.]

Turning to the case before us, it is obvious that the evidence places in is-

384

sue the honesty of accused's belief as affected by his gross intoxication on the night he supposedly observed whether Avery and Cassady were drinking. The matter of an appropriate instruction was thoroughly argued and ended with the law officer's decision to grant such an advice to the court members. Although he thereafter changed his mind, and in my view erroneously, defense counsel cannot be charged with a waiver for failing to request again an instruction already sought and thus denied, nor, under the circumstances, can his failure further to object to those advices given operate to deprive him of the right to contest at this level the final action of the law officer. As, therefore, an issue was raised and the doctrine of waiver is not applicable, it seems clear beyond cavil that the law officer erred to accused's prejudice in failing to give the proper instruction. Accordingly, reversal is required. United States v Taylor, supra.

The Chief Judge, however, states that the issue was satisfactorily covered by the law officer's advice to the court that they must find accused did not believe his testimony to be true. He bases his conclusion upon certain language which we used in United States v McCarthy, supra. In so acting, however, he overlooks the issue then before the Court and the context in which that language was used.

The *McCarthy* case involved the question whether a specification alleged the offense of false swearing when it did not aver that the accused's sworn statement was in fact false. The Government argued that the necessary falsity was implied by an allegation that the accused did not then believe his statement to be true. We rejected that contention and stated, at page 761:

". . . Here, that element [of falsity] is not expressly set out, and it is not impliedly averred by the allegation that accused did not then believe his statement to be true. Hilliard v United States, supra. *That portion of the count does no more than negate the defense of honest belief in the accuracy of the statement involved.*" [Emphasis supplied.]

It is a far cry from holding that an averment in pleading is designed to negate the existence of an affirmative defense to concluding that its reiteration as a part of the instructions on the elements of the offense is sufficient to inform the members of a court-martial that they must consider accused's intoxication in connection with determining whether he honestly believed his testimony to be true. If such were true, instructions on intoxication or mistake of fact would rarely be required, for the affirmative instructions on the particular state of mind required would eliminate any necessity for directing special attention to accused's condition. We have heretofore rejected that argument and have uniformly held that, absent waiver, appropriate instructions on the defense itself must be given if the evidence raises an issue concerning mistake of fact or intoxication. United States v Rowan, supra; United States v Simmons, 1 USCMA 691, 5 CMR 119; United States v Caillouette, 12 USCMA 149, 30 CMR 149. It is difficult for me to perceive how we can now conclude that this requirement is met by a simple declaration that accused must be found not to have believed his testimony was true.

For the foregoing reasons, I would answer the fourth certified question in the negative and reverse the decision of the board of review.