UNITED STATES, Appellee

v

JOHN A. CALLAGHAN, Private, U. S. Army, Appellant

14 USCMA 231, 34 CMR 11

No. 16,907

November 15, 1963

Captain Daniel H. Benson argued the cause for Appellant, Accused. With him on the brief were Colonel Joseph L. Chalk and Captain Charles W. Schiesser.

*Captain Otis D. Chapoton* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

KILDAY, Judge:

Accused's activities during August and September 1962 led to preferment of fifteen specifications of making worthless checks with intent to deceive, violative of Article 123a, Uniform Code of Military Justice, 10 USC § 923a, under the first charge; and a second charge and specification of dishonorably failing to pay a motel bill of over $100.00, contrary to the General Article of the Uniform Code of Military Justice, 10 USC § 934. Brought to trial before a general court-martial convened at Fort Devens, Massachusetts, accused pleaded not guilty, but was convicted as charged of the above offenses. He was sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement for one year. The convening authority approved the findings, but reduced the punishment to bad-conduct discharge, total forfeitures, and confinement at hard labor for six months, and a board of review in the office of The Judge Advocate General of the Army thereafter affirmed.

Accused then petitioned this Court for grant of review, and we elected to hear arguments limited to the following issue:

Whether the law officer erred in failing to instruct on mistake in regard to Charge I.

The findings on the Article 134 offense were returned by the court-martial under proper instructions, so the question before us relates only to the checks. With regard to those instruments, it is agreed that, during the period August 12 to September 23, 1962, accused made and presented fifteen checks drawn on his personal checking account—one to a fellow serviceman, three to a motor lodge, and the balance to a branch of an Air Force Exchange located at his station. The record reflects that accused's account was overdrawn and those checks were dishonored upon presentment and returned by the bank. Indeed, the bank closed

accused's account on September 6, after dishonoring several of accused's checks for insufficient funds. When apprised his checks had been dishonored by the bank, accused made repeated promises of restitution. He asserted that he attempted to borrow money for that purpose, but was unsuccessful, and the promises were not kept. Finally, he turned for help to his father, who ultimately repaid the amounts due on the checks.

These facts are undisputed. Accused, however, testifying in his own behalf, denied having the intent to deceive anyone at the time he wrote the checks. He asserted that, during the latter part of July and early August, he had mailed two separate and large deposits to his bank. He did not understand why these deposits were never received by the bank but, having forwarded them before writing any of the checks here involved, accused assumed the money was in his account. He testified that he believed there were sufficient funds at the bank to cover his checks at the time he wrote them.

No instruction was given by the law officer to the court-martial on the issue of mistake of fact.

We have long held that honest mistake constitutes a defense to the crime of larceny by check and to the greater of the two bad check offenses formerly cognizable under Article 134 of the Uniform Code of Military Justice, supra. United States v Remele, 13 USCMA 617, 33 CMR 149; United States v Downard, 6 USCMA 538, 20 CMR 254; United States v Rowan, 4 USCMA 430, 16 CMR 4; United States v Beasley, 3 USCMA 111, 11 CMR 111. Without question, honest mistake is likewise a defense to the offenses with which we are concerned in the instant case, which were prosecuted under the newly enacted worthless check statute, Article 123a, Uniform Code of Military

Justice, supra.[1] Certainly, one who denies intent to deceive, and honestly believes—based on his claimed deposits—that there are sufficient funds in his account to cover his checks, cannot be convicted of the last-mentioned offense.

Accordingly we hold, based on the accused's sworn testimony recounted hereinbefore, that the law ■ ■ officer erred in failing to instruct on honest mistake. In all fairness to the Government, which argues that accused's version of these incidents is so inherently unbelievable that an issue of mistake was not reasonably raised by the evidence, we freely concede that accused's story—all things considered—may be deemed weak and doubtful. However, as previously noted, his sworn testimony, if true, would require acquittal,[2] and as Judge Ferguson stated in United States v Kuefler, 14 USCMA 136, 139, 33 CMR 348:

"Accused's story may be implausible; it may have been rejected by the fact finders; and, indeed, it may, in light of the other evidence, smack of an afterthought by which he sought to escape his just deserts. But neither this Court, the board of review, nor the convening authority has the right so to pass upon accused's credibility as, by giving controlling weight to the evidence countervailing his declarations concerning the state of his own mind, to reject his testimony as incapable of presenting an issue of fact for decision by a nisi prius body."

Accused's understanding of the status of his account, given under oath to the members of the court-martial, may not, under the circumstances of this case, be rejected by us as a matter of law, and is sufficient to reasonably raise an issue of honest mistake in the case at bar.

All the findings, however, are not infested with error. As previously noted, the conviction on the bad debt specification is valid. So, too, are the findings of guilty on three of the worthless check offenses. Specifications 7, 8, and 9 of Charge I concern checks accused wrote to the motor lodge on September 22 and 23, 1962. Over a week before he issued those instruments, accused had been called in by his acting commanding officer. Accused was, at that time, already aware that a $345.00 check he had written to a fellow soldier had been dishonored, and was confronted at this interview with three more checks that had been returned by his bank for insufficient funds. Further, in his testimony at trial accused judicially acknowledged that, during the course of this interview, his superior—with his permission—telephoned the head cashier of his bank, with the result that accused became aware the bank had closed his account.

Manifestly, in view of this judicial admission by accused, no issue of honest mistake was reasonably raised as to the checks in specifications 7, 8, and 9 of Charge I, which were issued after he admittedly knew his checking account had been closed. As to those offenses the law officer's omission to instruct on the defense of mistake was not error.

In view of the foregoing, the decision of the board of review must be reversed. The findings of guilty of specifications 1 through 6, and 10 through 15, of Charge I, and the sentence, are set aside, and the record is returned to The Judge Advocate General of the Army for reference to the board of review for further action in conformity with this opinion. A rehearing may be ordered on the twelve specifications infested by instructional error and the sentence, or a board of review may reassess accused's punishment on the basis of the valid findings of guilty.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

The story told by this accused is incredible. Purportedly, he is a college

---

[1] For a discussion of the evolvement of this specific punitive article, see United States v Margelony, 14 USCMA 55, 33 CMR 267.

[2] Findings of not guilty would not result as to all the worthless check offenses, as we shall subsequently see, but acquittal on twelve of the Article 123a counts is demanded if we accept the story accused told at trial.

graduate with a major in psychology. Among other things, he testified he made two deposits by mail in the total amount of $750.00; he said "where . . . [he] got this money from was myself and a few other people . . . used to play the horses." One deposit of $500.00, was supposed to be in the form of money orders, but he could not produce the receipts; the other mailing was $250.00, in cash. He also testified that when he received his bank statement, he "assumed" that items listed in the deposit column, which did not correspond in either number or amount with the purported deposits, were credits to his account, despite the symbol "R" alongside each item, and the notation in the "KEY TO SYMBOLS" at the bottom of the statement that the letter stood for a "RETURNED ITEM." The accused admitted that as early as August 30, he knew that a check for $345.00 had been returned because there were insufficient funds in his account. Eleven of the checks in issue were written after that date; and eight of them were written after a half-dozen conversations with the assistant manager of the bank regarding the unsatisfactory state of the accused's account;[1] and as the majority points out, three checks were written after the accused knew the account was closed. In my opinion, the accused's testimony raises no issue of honest mistake. See my dissent in United States v Remele, 13 USCMA 617, 33 CMR 149. However, I need not rely exclusively upon that position to disagree with the majority.

The accused admitted issuing all the checks set out in the specifications of Charge I. His testimony showed, and the arguments of counsel emphasized, that there was only one question before the court; namely, did he issue the checks on the "assumption . . . that the money was there," or did he write them with the intent to deceive as alleged? The law officer instructed the court-martial that it must find beyond a reasonable doubt that the accused entertained an intent to deceive. He defined intent to deceive as "an intent to mislead, to cheat, or trick . . . for the purpose of gaining an advantage." He also instructed the court-martial it must weigh all the evidence including that relating to whether the accused "had knowledge of the insufficient funds" in his account. On the latter point he instructed as follows:

"As to each of the specifications in Charge one, there is also the element of knowledge, that is, knowledge that he did not have sufficient funds within the bank for the payment of the checks upon presentment. Knowledge again is an element which normally cannot be established by direct evidence. However, such knowledge on the part of the accused, like any other fact, may be proved by circumstantial evidence, that is, by evidence of facts or circumstances from which the only reasonable and justifiable inference is that the accused had such knowledge."

The law officer did not, as the majority indicates, instruct specifically on the effect of the accused's "assumption" that he had sufficient funds in the bank. There is, however, no magic formula of specific words which must be used in an instruction on applicable rules of law. It is sufficient if the words used convey the essence of the principles in issue. Instructed that it must affirmatively find beyond a reasonable doubt that the accused had knowledge of the insufficiency of the funds in his account at the time he wrote each of the checks, it is "inconceivable that the . . . [court-martial] could have failed to understand that if the . . . [accused] acted in good faith . . . [he] should go free." Berenbeim v United

---

[1] It also appears the accused lied before trial about the reason for the insufficiency of his account. He told his acting battery commander that the account was a joint account, and the deficiency was due to utilization of the account by the other party, without his knowledge. The account, however, is in the sole name of the accused. It seems to me the only true testimony by the accused as to his intention regarding the checks is the following: "When I received the statement I figured everything was *going according to Hoyle because there was no noise from anybody.*" (Emphasis supplied.)

234

States, 164 F2d 679, 684 (CA10th Cir) (1947), cert den, 333 US 827, 92 L ed 1113, 68 S Ct 454 (1948). In my opinion, the instructions were sufficient to apprise the court-martial of the issues in the case, and of the effect of the accused's testimony on those issues. United States v Chaney, 12 USCMA 378, 30 CMR 378. I would affirm the decision of the board of review.