UNITED STATES, Appellee,

v.

Andrew J. SMITH, Airman First Class,
U.S. Air Force, Appellant.

No. 97–0138.
Crim.App. No. S29060.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 14, 1998.

Decided Sept. 30, 1998.

For Appellant: *Captain Michael L. McIntyre* (argued); *Lieutenant Colonel Kim L. Sheffield* (on brief); *Colonel David W. Madsen* and *Colonel Douglas H. Kohrt.*

For Appellee: *Captain Martin J. Hindel* (argued); *Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin,* and *Major LeEllen Coacher* (on brief); *Colonel Brenda J. Hollis.*

*Opinion of the Court*

SULLIVAN, Judge:

In March of 1995, appellant was tried by a special court-martial composed of officer members at Travis Air Force Base, California. Contrary to his pleas, he was found guilty of dereliction of duty by using a government credit card for unofficial purposes; making and uttering a bad check with intent to defraud; and dishonorable failure to pay a just debt, in violation of Articles 92, 123a, and 134, Uniform Code of Military Justice, 10 USC §§ 892, 923a, and 934, respectively. He was sentenced to a bad-conduct discharge, confinement for 30 days, and reduction to the lowest enlisted pay grade. The convening authority approved the adjudged sentence on June 5, 1995. The Court of Criminal Appeals affirmed in an unpublished opinion on August 30, 1996, 1996 WL 512400.

On March 7, 1997, this Court granted review on the following issue:

WHETHER THE EVIDENCE IS LEGALLY SUFFICIENT IN REGARD TO CHARGE II AND ITS SPECIFICATION.

We hold that the evidence of record was legally sufficient to support appellant's conviction for making and uttering a bad check with intent to defraud, in violation of Article 123a. *See generally Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Williams*, 21 MJ 360, 362 (CMA 1986).

Appellant was found guilty of making a bad check with intent to defraud, in violation of Article 123a.[1] The finding of guilty states:

Specification: In that [appellant] did, at Travis Air Force Base, California, on or about 27 October 1994, with intent to defraud and for the procurement of lawful currency, wrongfully and unlawfully deliver to the Travis Base Exchange, a certain check upon Travis Federal Credit Union, in words and figures as follows, to wit: check number 1341 for the sum of $80.00, *then knowing that he,* the maker thereof, *did not or would not have sufficient funds in or credit with such bank for the payment of the said check in full upon its presentment.*

(Emphasis added.)

Evidence was admitted in this case showing that appellant made and cashed Travis Federal Credit Union Check No. 1341 for $80 cash on Thursday, October 27, 1994, at the Travis Base Exchange. It was also shown that appellant had a $6 balance in his account at that time as well as a second outstanding check for $40, uttered on October 25, 1994. The evidence of record additionally showed that the $80 check was rejected by the Travis Federal Credit Union on Friday, October 28, 1994, for insufficient funds and returned to the Travis Base Exchange on Tuesday, November 1, 1994. It was further evidenced that appellant's checking account at the credit union received a regular payroll allocation of approximately $248 around the 1st and 15th day of each month. Finally, there was evidence showing that notices of dishonor were sent by the exchange to appellant on November 1 and 16, 1994, and he paid the exchange the amount of the check ($80) on December 7, 1994.

Appellant contends that the evidence presented in his case was legally insufficient to support his conviction of this offense. *See generally Jackson v. Virginia, supra.* More particularly, appellate defense counsel argues that the prosecution did not prove beyond a reasonable doubt that appellant had the "intent to defraud AAFES [the Exchange Service]" when he wrote the $80 check." In making this argument, he seizes upon the Government's proof in this case showing appellant's "conduct in the maintenance of his checking account." He asserts that the Government's proof showed that appellant "was clearly keeping an 'eagle eye' on his account for one reason only—to ensure that the checks he wrote would clear the bank." Appellate counsel finally asserts on brief: "It is clear that he reasonably believed that a check he had written on a Thursday would not be presented the next day, but on the following Monday when his pay was to be deposited. Appellant took a risk that[,] based on the history of his other checks clearing his bank[,] was not unreasonable."

— — —

Article 123a states:

**Art. 123a. Making, drawing, or uttering check, draft, or order without sufficient funds**

Any person subject to this chapter who—

(1) for the procurement of any article or thing of value, *with intent to defraud;* or

(2) for the payment of any past due obligation, or for any other purpose, with intent to deceive, makes, draws,

---

1. This crime is different from the offense of the dishonorable failure to maintain sufficient funds for bad checks written without an intent to defraud and without knowledge of insufficient funds to cover the check in violation of Article 134, UCMJ, 10 USC § 934. *See* para. 68, Part IV, Manual for Courts-Martial, United States (1995 ed.); *United States v. Margelony*, 14 USCMA 55, 59, 33 CMR 267, 271 (1963). In view of our resolution of the Article 123a claim of evidentiary sufficiency, we need not address appellant's second claim that the evidence was insufficient to show a dishonorable-check offense.

utters, or delivers any check, draft, or order for the payment of money upon any bank or other depository, *knowing at the time that the maker or drawer has not or will not have sufficient funds in,* or credit with, the bank or other depository for the payment of that check, draft, or order in full upon its presentment, shall be punished as a court-martial may direct.

(Emphasis added.) The history of this codal prohibition is rooted in civilian law, and one of its main purposes is to prevent the intentional disruption of the flow of commercial paper. *See United States v. Woodcock,* 39 MJ 104, 106 (CMA 1994); *United States v. Margelony,* 14 USCMA 55, 57, 33 CMR 267, 269 (1963).

This Court has expressly recognized that an honest mistake is a defense to a bad-check charge under Article 123a. We said:

Without question, honest mistake is likewise a defense to the offenses with which we are concerned in the instant case, which were prosecuted under the newly enacted worthless check statute, Article 123a, Uniform Code of Military Justice, *supra. Certainly, one who denies intent to deceive, and honestly believes—based on his claimed deposits—that there are sufficient funds in his account to cover his checks,* cannot be convicted of the last-mentioned offense.

*United States v. Callaghan,* 14 USCMA 231, 233, 34 CMR 11, 13 (1963) (footnote omitted; emphasis added). So has the President recognized this defense to such a charge. *See* para. 49c(18), Part IV, Manual for Courts-Martial, United States (1995 ed.) ("Honest mistake is an affirmative defense to offenses under this article. *See* RCM 916(j)").

We note that the Government has the burden to prove each element of the charged offense beyond a reasonable doubt. *See* Art. 51(c)(4), UCMJ, 10 USC § 851(c)(4). Here, it was required to introduce some evidence from which a reasonable factfinder could find or infer beyond a reasonable doubt that appellant made and uttered his bad check with an intent to defraud. It was also required to

show that appellant, at that time, had knowledge that his funds were or would be insufficient to cover the check. *Jackson, supra* at 319, 99 S.Ct. 2781; *see* para. 49c(14) and (10), Manual, *supra.* Article 123a specifically establishes a statutory rule of evidence concerning the intent to defraud and the requisite knowledge. It states:

The making, drawing, uttering, or delivering by a maker or drawer of a check, draft, or order, payment of which is refused by the drawee because of insufficient funds of the maker or drawer in the drawee's possession or control, *is prima facie evidence of his intent to defraud or deceive and of his knowledge of insufficient funds in, or credit with, that bank or other depository, unless the maker or drawer pays the holder the amount due within five days after receiving notice, orally or in writing, that the check, draft, or order was not paid on presentment.*

(Emphasis added.) Accordingly, the Government met its burden of proof on intent and knowledge in this case when it showed the making of a dishonored check, notice of dishonor to appellant, and his nonpayment of that check within 5 days. *See also* para. 49c(17), Part IV.

The question raised by appellant is whether evidence in the record suggesting an honest mistake on appellant's part would render the prosecution's case legally insufficient. Appellant did not testify in this case that he had no intent to defraud or made an honest mistake when he wrote the charged check. *Cf. United States v. Remele,* 13 USCMA 617, 621–22, 33 CMR 149, 153–54 (1963). However, the Government's evidence shows that appellant received pay allocations on the 1st and 15th of each month of approximately $248, which was more than enough to cover a $80 bad check written on October 27, 1994. On the other hand, evidence was presented that appellant did not immediately pay the dishonored check until December 7, 1994, more than 30 days after his November 1, 1994, pay allocation and notice of dishonor. Whether an inference of good faith or honest mistake should be drawn in these circum-

stances was a question for the factfinder. *See United States v. McCrary,* 1 USCMA 1, 5–6, 1 CMR 1, 5–6 (1951). In any event, existence of defense evidence countering the Government's case on an element or raising a special defense (*see* RCM 916(a)) does not undermine the legal sufficiency of otherwise sufficient government proof. *See United States v. Williams,* 21 MJ 360, 362 (CMA 1986)(evidence raising a defense does not render Government's case "insufficient to convict"); *see also United States v. Ford,* 23 MJ 331, 335–36 (CMA 1987).

2. This is a personal footnote of the author judge:

There are several prisms through which one can look at evidence that is introduced at trial. One of these prisms is the eye of a "reasonable juror." That juror could have had a sympathetic view of a person like the accused who writes a check at a store on a Thursday knowing (or hoping) that the store won't finish processing the check until Monday, when a direct deposit into his checking account will cover the check. Properly presented in a defense case, this could have resulted in a juror's voting not guilty. As the English religious martyr, John Bradford, said in the 16th Century, a time of religious persecution, when watching several criminals being led to their execution:

There, but for the grace of God, goes John Bradford.

Later, in fact, John Bradford was burned to death at the stake as a heretic.

In sum, sitting as an appellate court, not a trial court,[2] we hold that the prosecution introduced evidence in this case showing more than appellant's playing the "float game"[3] and getting caught. It is on this basis that his conviction under Article 123a must lawfully be sustained. *See* Art. 67(c), UCMJ, 10 USC § 867(c)(1994).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.

Nevertheless, we, as appellate judges, must view the evidence through the special prism of an appellate judge with *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as our focus point. Through this prism, appellant's case fails and the conviction must be affirmed. *See United States v. McCrary,* 1 USCMA 1, 6, 1 CMR 1, 6 (1951) ("[w]ere we authorized to find the facts we might conclude differently").

3. "A checking float occurs when someone writes a check without sufficient funds, then covers the check before it returns to the bank for payment." *Sailstad v. Hendrickson (In re Clemente),* 15 B.R. 937, 941 (Bankr.N.D.Ohio, W.D.1981). On the other hand, check-kiting occurs when a check is covered by another check or series of checks which themselves are not supported by sufficient funds. *Id.* at 940–41.