## UNITED STATES, Appellee

v

## ROOSEVELT ROY, Hospitalman, U. S. Navy, Appellant

### 13 USCMA 102, 32 CMR 102

No. 15,499

May 18, 1962

*Lieutenant Colonel M. G. Truesdale,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Commander Leo F. O'Brien,* USN.

*Lieutenant Harry Lee Hall,* USN, argued the cause for Appellee, United States. With him on the brief was *Captain James W. Grant,* USN.

### Opinion of the Court

KILDAY, Judge:

The accused was arraigned before a special court-martial convened at Long Beach, California, on charges alleging absence without authority; offering violence against a commissioned Navy nurse; unlawful entry of nurses' quarters with intent to commit a criminal offense; and two specifications of communicating, in writing, to two other nurses, certain obscene language, in violation of Articles 86, 90, 130, and 134, Uniform Code of Military Justice, 10 USC §§ 886, 890, 930, and 934, respectively. At his trial, he entered a plea of guilty to the charge of unauthorized absence, but pleaded not guilty to all of the other charges and specifications. The court-martial ac-

quitted accused of one count of communicating obscene language, but found him guilty as charged of the other alleged offenses. He was sentenced to a bad-conduct discharge, confinement at hard labor and forfeiture of $40.00 per month for four months, and reduction to the grade of hospital recruit.

After the convening authority had approved the proceedings, the case was submitted to the supervisory authority exercising general court-martial jurisdiction for his action. He disapproved and set aside accused's conviction for housebreaking, but otherwise approved the findings of guilty and the sentence, and the board of review affirmed the same. Subsequently, accused petitioned this Court, and we granted review on a

102

single assignment to determine whether the receipt into evidence of a certain exhibit was error to the prejudice of the accused.

The record discloses that at approximately 10:00 p. m. on the night of February 4, 1961, a male intruder was discovered in the nurses' quarters, a restricted area aboard the U.S.S. HAVEN. The intruder covered his face with a pillow, pushed a nurse aside, and fled from the area. He was sufficiently observed by two nurses to identify him as being a tall, slender, colored person wearing blue convalescent pajamas. Neither of the nurses who discovered the intruder could identify him positively, although one of them thought at the time it could be the accused, who had been assigned to duty on the HAVEN for about a year and a half but was, at the time, a ward patient. There were some twelve negro men stationed aboard the ship, one of whom was accused. And it was established not only that there was a route of access to the nurses' quarters from the ward where accused was a patient, but also accused admitted he was absent from his ward for a period of time on the night in question.

Later, certain obscene notes were discovered in the nurses' quarters, one of which stated, in part, that the writer was a patient. Also, a large sized pair of shower sandals was located in the stateroom from which the intruder fled. These sandals were traced to the accused, who had borrowed them from another sailor two days prior to the incident. Accused testified that during the night of the incident, and near the hour thereof, he reached for his slippers at his bunk and discovered them, his robe, and some other personal property missing; that he reported this to one Mason, a corpsman on duty. Mason, however, did not appear as a witness, and a sailor who had originally owned the shower slippers testified that the day after the incident accused told him he had lost the slippers and would pay for the same. Further, a partial fingerprint lifted from a light bracket in one of the nurses' staterooms was admitted in evidence, as were finger-print and handwriting exemplars voluntarily submitted by the accused.

The Superintendent of Records and Identification of the Long Beach Police Department qualified as an expert in the comparison and identification of handwriting and fingerprints with some twenty-six years of experience. He detailed extensive study in both fields at educational institutions, police departments, and several courses of instruction by the Federal Bureau of Investigation for various periods of time extending to as much as six months. He testified that, in his opinion, the obscene notes found in the nurses' quarters were in the handwriting of the accused. He also submitted his conclusion that the partial fingerprint was made by the accused.

After the expert had testified, trial counsel produced a letter, bearing what appears to be the facsimile signature of the Director of the Federal Bureau of Investigation, and an attached statement in which the fingerprint lifted from the nurse's stateroom was identified as being identical with a submitted fingerprint secured from accused. The letter also stated the latent partial print and the copy of accused's fingerprints were identical with fingerprints in the files of the Federal Bureau of Investigation for a man with accused's name and serial number who enlisted in the Navy in 1958. The correspondence with the Federal Bureau of Investigation was allowed into evidence as an exhibit over the objection of the defense, and it is the action of the president in admitting that exhibit which constitutes the basis for the issue granted by this Court.

The board of review held, and we fully agree, that the correspondence with the Federal Bureau of Investigation was improperly allowed into evidence. The correspondence was clearly inadmissible hearsay and it was error to permit the court-martial to consider it. Indeed, the Government appears tacitly to concede as much in its brief, and no good purpose would be served by exploring the matter further.

However, it seems equally clear there

is no fair risk such error could have materially prejudiced the substantial rights of the accused. See Article 59 (a), Uniform Code of Military Justice, 10 USC § 859. A fingerprint expert shown to be eminently qualified in the field, and whose expertise was conceded by the defense, testified to identically the same effect. Therefore, the questioned evidence was cumulative only. Moreover, and in addition, we point out that the fingerprint evidence, insofar as it bears on the merits, is not of overriding significance. It merely serves to establish accused's presence in the particular stateroom at some indefinite time. But quite apart from that, the other competent evidence of record fixes accused's presence in the nurses' quarters at the time of the incident compellingly, and is abundantly sufficient to have justified the court-martial in finding him guilty of the offenses for which he stands convicted.

The accused was one of a very few patients on the hospital ship at the time of the occurrence fitting the description of the intruder, and he was admittedly absent from his ward for a period near the time of the incident. Further, the record shows he had access to the nurses' quarters. Moreover, his prior duty was as a corpsman, and he had been stationed on the ship for about a year and a half, during which time the nurse assaulted had known him. She impulsively stated at the instant of the occurrence that it might be the accused. Additionally, obscene notes were found in the nurses' quarters, and all were identified by the handwriting expert to be in the writing of the accused. And it should be remembered, further, that the writer of those notes indicated he was a patient, which dovetails neatly both with the nurses' description of the intruder, that of the accused, and the latter's status at the time of the occurrence. Also, shower slippers traced to accused were found in the nurses' quarters from which the the intruder fled. True, accused testified that his slippers had been stolen and that he reported their loss to Corpsman Mason. However, he did not produce Mason as a witness and, significantly, another sailor aboard the

ship testified accused told him the day after the occurrence that he had lost the slippers, for which accused accepted responsibility and agreed to make restitution. Finally, there is also in evidence the statement made by accused while being interrogated about the offenses—and after proper warning in accordance with Article 31, Uniform Code of Military Justice, 10 USC § 831 —to the effect " 'you got your man, what else do you want, or what more do you want.' "

In the face of this incriminating record, appellate defense counsel argue, nonetheless, that "[t]his prosecution exhibit, carrying with it the tremendous prestige and international reputation of the Director of the Federal Bureau of Investigation, was bound to have an influence upon these medical members of the court-martial. Even should they question the accuracy of the opinions of Mr. Bradford [the expert from the Long Beach Police Department], they unquestionably accepted what appeared to them as being Mr. Hoover's identification of the accused as the intruder."

We feel that counsel ascribe an unjustified degree of naivete to the members of the court-martial. We doubt sincerely that any member of this court-martial would be led to believe that the printed facsimile of the signature of J. Edgar Hoover indicated the Director of the Federal Bureau of Investigation had given his personal attention to the identification of this fingerprint. Indeed, for aught that appears in this record, the court-martial members may have been in the same position as Judges of this Court—none of whom know whether J. Edgar Hoover can identify fingerprints.

However, this record shows affirmatively that the court-martial was not overawed by the international reputation of the Director of the Federal Bureau of Investigation. The latent fingerprint was lifted from the light bracket in a stateroom assigned to the alleged addressee of certain of the obscene writings. The notes alleged to have been communicated to that nurse were found on her bunk in the same state-

room in which the latent print was found, yet the only alleged offense of which the court-martial acquitted accused was communicating those particular obscenities. Manifestly, therefore, the correspondence in question had no influence on the court-martial as to this specification. Nor would we be justified, in light of the posture of this record, in concluding that the court ascribed any significant weight to that exhibit.

The correspondence being merely cumulative, and the other competent evidence of guilt being clear and compelling, the erroneous admission of the exhibit did not materially prejudice the substantial rights of the accused. United States v Dickenson, 6 USCMA 438, 20 CMR 154; United States v Williams, 5 USCMA 406, 18 CMR 30; United States v Allbee, 16 CMR 454, affirmed, 5 USCMA 448, 18 CMR 72.

The decision of the board of review is, therefore, affirmed.

Chief Judge QUINN and Judge FERGUSON concur.