UNITED STATES, Appellee

v

WILBERT BARNES, Airman Second Class,
U. S. Air Force, Appellant

15 USCMA 546, 36 CMR 44

No. 18,673

November 26, 1965

■■■■■■■■■■■■■■■■■■■■■■■

*Lieutenant Colonel Joseph B. McMullin* argued the cause for Appellant, Accused. With him on the brief were *Colonel Robert O. Rollman* and *Colonel Joseph Buchta.*

*Lieutenant Colonel Robert M. Haynes* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a special court-martial convened at Tyndall Air Force Base, Florida, the accused pleaded guilty to one specification of unauthorized absence and not guilty to another, both allegations in violation of Uniform Code of Military Justice, Article 86, 10 USC § 886. He was found guilty of both counts and sentenced to bad-conduct discharge, forfeiture of $48.00 per month for six months, confinement at hard labor for six months, and reduction. Intermediate appellate authorities affirmed, and we granted accused's petition for review specifying the following issue:

"Whether the accused was prejudiced by the hearsay rebuttal testimony of Major Stallworth (R. 29, et seq) regarding information received from Travis Air Force Base."

The question presented relates only to the specification of absence without leave to which accused pleaded not guilty. As to that count, the Government introduced an extract copy of a morning report which reflected accused's change in status to absence without leave on August 26, 1964, and his return to military control on September 17, 1964.

In answer to the Government's case, the defense established that the accused had been issued orders directing his permanent change of station from Tyndall Air Force Base, Florida, to a unit located in England. The orders permitted a thirty-day leave en route and required accused to report to Travis Air Force Base, California, for transportation to his final destination, on August 26, 1964.

Accused elected to testify in his own behalf. He declared that, in accordance with his orders, he cleared Tyndall Air Force Base, and remained in Panama City, Florida, for the period of his leave. On August 21, 1964, "about five days before I was due to report to Travis Air Force Base, . . . I called for an extension. An extension was granted from Travis Air Force Base, California, to me by telephone and at the time I was apprehended on the 17th of September, to the best of my knowledge I still had seven days accrued leave still on this extension that was granted to me."

According to accused, he explained the circumstances of his transfer to the individual who answered the telephone, was told "to hold on . . . and at this time when someone answered the phone—I was told it was a Tech. Sergeant but I don't know his name—I explained the reason for my calling to him and I was granted an extension until the 23rd of September and to the best of my knowledge that was a valid extension."

Accused also testified that he had received travel pay for his expenses in connection with proceeding to Travis Air Force Base; that the telephone call to that station had cost him in excess of six dollars; and that the purpose for seeking an extension of his leave was in order to get his daughter properly situated before going overseas. His testimony further reflects some doubt as to the location of England. He did not question going there via California, however, as, "Of all the other movements PCS I have made I went where the order so stated and they were correct and, as far as I knew, this one was too, so I never questioned it."

In rebuttal, the prosecution adduced the testimony of Major Stallworth, Assistant Director of Base Personnel, Tyndall Air Force Base, who declared Barnes' orders were administratively incorrect in directing him to report to Travis Air Force Base. He should have been ordered to report to McGuire

**547**

Air Force Base, New Jersey, for transportation to his new station in England. Major Stallworth further testified, upon being notified that accused "had not reported to McGuire," a message was dispatched to Travis Air Force Base, "querying them for information on any contact they may have had with Airman Barnes . . . and they reported back by message that they had nothing in their files to reflect this." He conceded a Military Air Transport terminal might have the authority to grant leave "under emergency circumstances," but such should be confirmed by contacting Tyndall Air Force Base or accused's new station in order that appropriate confirmatory orders might be issued. At the least, he believed any orders amending those issued to the accused should have been distributed to Tyndall, but "[i]n communications with Travis and with McGuire no such order was mentioned."

In his final argument, the trial counsel spoke of the alleged extension of accused's leave, but referred specifically to the fact that Major Stallworth's inquiries "indicate that no such action ever, in fact, existed."

The staff judge advocate's post-trial review likewise relied upon Major Stallworth's testimony as refuting that of the accused by establishing Travis Air Force Base's "records reflect[ed] no contact with the accused."

The board of review, however, concluded the testimony concerning the messages was inadmissible hearsay, but found no prejudice to the accused on the basis that, though he may have honestly believed his leave was extended, such was mistaken and, in light of the record, unreasonably so. Hence, he had no defense to the charge. See United States v Holder, 7 USCMA 213, 22 CMR 3.

The testimony regarding answers to inquiries made of Travis Air Force Base concerning the ac- ██ cused's allegation that such installation authorized an extension of his leave is clearly hearsay. Manual for Courts-Martial, United States, 1951, paragraph 139a; United States v Sessions, 10 USCMA 383, 27 CMR 457. As we have said before, "It is fundamental . . . that statements of others not under oath, and not in court subject to cross-examination, are inadmissible when offered to prove the truth thereof." United States v Sessions, supra, at page 387; see also United States v Mounts, 1 USCMA 114, 2 CMR 20. Indeed, there is little difference between the declarations received in this case and those involved in United States v LaRue, 11 USCMA 470, 29 CMR 286, except that the latter involved a written statement of events affecting the accused, whereas we are here confronted with an oral recitation of the contents of such a document. See also United States v Webb, 12 USCMA 276, 30 CMR 276, and United States v Roy, 13 USCMA 102, 32 CMR 102.

We turn, therefore, to the issue of prejudice. We have no doubt that a fair risk of harm to the █ accused's substantial rights is presented. Cf. United States v Roy, supra; Code, supra, Article 59, 10 USC § 859. The accused's defense, as evidenced by his testimony, was simply that he had received authority for his extended absence from Travis Air Force Base, to which he had been directed to report by official Air Force orders. This contention was met with the hearsay testimony of Major Stallworth that Travis possessed no information concerning the granting of such extension. Indeed, the trial counsel relied expressly on that hearsay in his final argument as conclusively answering the accused's story. And, as we noted above, even the staff judge advocate utilized it in his post-trial review as justifying rejection of the defense. Actual harm to the accused, therefore, is convincingly demonstrated.

In this connection, we thrust to one side the position of the Government and the board of review below that, as a matter of law, such belief on the accused's part, albeit honest, was unreasonable. The evidence was sufficient fairly to place the matter in issue at the trial level, and neither the board nor this Court is free to disregard Barnes' sworn testimony, judge his

credibility, and dismiss his actions as unreasonable in law. Under these circumstances, the factual issues may only be resolved by a properly instructed *nisi prius* body. United States v Callaghan, 14 USCMA 231, 34 CMR 11; United States v Kuefler, 14 USCMA 136, 33 CMR 348; United States v Jones, 13 USCMA 635, 33 CMR 167; United States v Remele, 13 USCMA 617, 33 CMR 149. When that forum is permitted to consider hearsay rebuttal of the defense presented to the extent and weight depicted in this record, it is obvious that its factual determination to reject accused's claim cannot have been fairly reached. Accordingly, we find the error materially prejudiced his substantial rights.

The findings of guilty of specification 1 of the Charge are set aside. The decision of the board of review is reversed and the record of trial is returned to the Judge Advocate General of the Air Force. The board may reassess the sentence on the basis of the findings of guilty as to specification 2 of the Charge or order a rehearing on specification 1 and the penalty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):
I would affirm the decision of the board of review.