THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* GEORGE WATSON and Others, Defendants.

Supreme Court, Westchester County, February 13, 1935.

*Walter A. Ferris, District Attorney* [*Harry M. Scoble, Deputy,* of counsel], for the People.

*Kent, Hazzard & Jaeger* [*Ralph S. Kent* and *Lawrence S. Hazzard* of counsel], for the defendants George Watson and others.

*Clark & Davis* [*William D. Cunningham* of counsel], for the defendants Thomas B. Hill and another.

*Lynch, Cahn & Weed* [*Humphrey J. Lynch, Monroe J. Cahn* and *Edward J. A. Rook* of counsel], for the defendant Robert R. Rennie.

BREWSTER, J.   The defendants move to set aside and quash the three indictments presented by the Westchester county grand jury in the fall of 1934.

Two of these indictments, indorsed as " No. 1 " and " No. 5," respectively, charge the defendants with grand larceny in the first degree, each by two counts.   The third, indorsed " No. 3," carries, as separate counts, an accusation of a violation of sections 952 and 926 of the Penal Law, respectively.

All of these indictments are in the simplified form, sanctioned for use in certain cases by the recent amendment to the Code

of Criminal Procedure (Art III-A [§§ 295-a–295-k], added by Laws of 1929, chap. 176). Each of them has been amplified by a bill of particulars, and, as a preliminary to the motions now here, the defendants have duly secured an inspection of the grand jury's minutes.

The indictment styled " No. 1 " is based upon a misapplication of the proceeds of an assignment of rents made by defaulting corporate mortgagor to a corporate mortgagee under circumstances upon which is based the conclusion of the individual criminal liability of the defendants as officers of the corporate mortgagee. This indictment fails as against all of the defendants except George Watson and Leverett G. Cross by the concession at the argument of the motions that the testimony before the grand jury failed to show that at the time of this misapplication any of the defendants, save those two, were officers of such mortgagee. The fact that they were not such officers was likewise conceded by the People.

The second count of the indictment, known as " No. 3," I understand to be not pressed by the district attorney, who frankly acknowledges the very evident fact that the grand jury minutes disclose no evidence that the guaranteed mortgage certificates in question had any " market price," or that the advertisement charged was made with intent to affect same.

Subject to the aforesaid elimination as regards indictment " No. 1," the grand jury minutes disclose evidence that the defendants were officers in divers grade as to rank, duty and activity, of a corporation, to wit, First Mortgage and Title Company, located at New Rochelle, Westchester county, N. Y., at the time the various offenses charged are alleged to have been committed. It was the business of that corporation to deal in real estate mortgages on properties situate in that county. One of its activities was the issuance and sale of so-called guaranteed mortgage certificates, whereby, in legal effect, in consideration of certain sums paid to it, it executed its promise to pay to the holder a certain sum at a certain time, with semi-annual interest payments, and, as collateral security therefor, it deposited, from its holdings, certain first mortgages on real estate with a third party, all in pursuance of agreements as to various matters, made with the depositary and the holders of its promises to pay. The very nature of the corporation's business thus entailed many thousands of separate transactions and involved a great amount of detail. Two of these transactions are the bases of the grand larceny indictments. The evidence before the grand jury clearly indicates that these indictments thus accuse the defendants, vicariously,

in that there was no proof that any of them actually did or participated in the doing of the two things, or themselves took any part in the conduct of the two transactions upon which the larcenous charges are based. Neither was there any competent proof before the grand jury that any of the defendants had knowledge of the acts performed which caused or consummated those transactions at the time of their occurrence, or that they had ever so conducted themselves with reference thereto as to have knowingly directed or permitted them in any such affirmative manner as to be the legal equivalent of knowledge. But, on the assumption that these transactions constituted larcenies, it is sought to fasten criminal liability upon these defendants because they failed to prevent their occurrence. In other words, it is argued that they are shown, *prima facie*, to be guilty of larceny because their inattention to or neglect of duty as officers of the corporation was a proximate cause of the forbidden acts. The mere statement of this proposition discloses its futility. The bare neglect of a legal duty is not a crime unless some statute so prescribes. (*People v. Knapp*, 206 N. Y. 373, 380; Penal Law, § 22.) Neither do the sections of the Penal Law which these indictments charge, nor do any other statutory provisions, predicate nonfeasance as larceny. A felonious intent to deprive or defraud the owner of his property is essential to constitute the taking or misappropriation a larceny. Of course such intent cannot exist where, as here, the defendants were ignorant of the alleged misappropriations or conversions.

It is also my opinion that the evidence before the grand jury failed to establish that the acts charged in the bill of particulars supplementing indictment " No. 1 " constituted the crime charged. The application of the proceeds of the assigned rents to the corporation's reimbursement for its prior and advance interest payments made to the holders of its certificates was done openly and avowedly under the claim of a right so to do, preferred in good faith, even though, in another case, a year later, such a claim was held to be untenable. The claim of the right to make the application which was made was a claim of title founded upon the subrogation provision in the certificates themselves as distinguished from a claim of a right to payment of an indebtedness. (Penal Law, § 1306.)

As to indictment " No. 3," here, too, we find no evidence before the accusing body that any of the defendants actually composed or caused the advertisement charged. Just who did so does not appear. There is some evidence that some of the defendants saw it when published, and that some or all had seen and acquiesced

in prior advertisements of a similar nature, and, perhaps, inferentially, that all had by general acquiescence sanctioned it. But this I deem insufficient to make a *prima facie* case of the guilt of any of these individual defendants because of the vague and indefinite character of such proof. Moreover, I am also of the opinion that here, too, there was a failure in establishing that this publication offended against section 952 of the Penal Law. To so offend, the publication must have been made with an intent to deceive; the advertisement published must have been as to facts affecting the value of the mortgage certificates, and the defendants must have known or have had reasonable ground to believe that such advertised facts were false. Nothing was said directly concerning the value of the certificates. It cannot be that the mere puffing character of the phraseology employed in praising the virtues of the stock in trade was a false statement or advertisement of a fact within the fair meaning and intent of the statute. The intent to deceive may of course be inferred from the falsity of the statement of fact, but the falsity of the statement must be determined as to the time it was made. It may not be viewed for such appraisement in retrospect. The precise language which seems to be relied upon by the People as constituting the false statement of a fact which affected the value of the evidences of debt is: " our entire capital, surplus and profits are pledged as security." As the statement of a fact this phrase may have been misleading, but this alone is not sufficient evidence of its falsity. It is susceptible of different meanings. As to one, that the corporation's total assets had been hypothecated to secure the payments promised and evidenced by the certificates amounts to an absurdity. It is difficult to understand how one could have understood that the corporation could continue in business if such a pledge had been executed. " Pledge " is a word of different meanings. In one sense it is synonymous with promise. Doubtless this is its most generally understood meaning to the average person. Its other connotations are technical. The certificates were the direct obligation of the company to pay a stated amount at certain times. The deposited mortgages were the collateral security therefor, but they were by no means the sole source of dependence. The direct obligation of the corporation continued, and thus, in a non-technical sense, its total assets were liable for the promise to pay. In this sense, and clearly in a common rhetorical sense, the entire capital, surplus and profits were pledged as stated. The statute (Penal Law, § 952) is highly penal. It must be strictly construed. Thus, when a given statement of fact is relied on to constitute a felony and it is susceptible of two meanings, one innocent, the hypothesis of an interpretation that involves

guilt is not sufficient to establish criminality. (*People* v. *Razezicz*, 206 N. Y. 249; *People* v. *Mantin*, 184 App. Div. 767, 770.) This rule applies with added force when the innocent interpretation is the easier, more logical, and the one more probably intended, and where the other amounts to a virtual absurdity.

All the pending motions are granted. Submit orders.