UNITED STATES, Appellee

v.

WILLIAM S. ROWAN, Corporal, U. S. Army, Appellant

4 USCMA 430, 16 CMR 4

No. 3635

Decided June 25, 1954

LT COL James C. Hamilton, U. S. Army, and 1ST LT Jack W. Tucker, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Upon trial by general court-martial the accused pleaded guilty to absence without leave, in violation of Article 86, Uniform Code of Military Justice, 50 USC § 680, and was also found guilty of twelve specifications of larceny by check, in violation of Article 121, Uniform Code of Military Justice, 50 USC § 715. He was sentenced to dishonorable discharge, total forfeitures, and confinement at hard labor for three years. The convening authority suspended the execution of the dishonorable discharge, reduced the confinement to eighteen months, and otherwise approved. The board of review in the office of The Judge Advocate General of the Army affirmed, and we granted the petition for review to consider the sufficiency of the law officer's instructions concerning the defense offered by the accused as to ten of the larcenies.

During the period December 3, 1952,

**431**

to December 9, 1952, accused negotiated ten checks to Dyson Brothers Delicatessen and the Del Ray Meat Market, two neighborhood stores in Alexandria, Virginia. The checks were drawn on the Kanawha Valley Bank, Charleston, West Virginia, and the accused received cash for the face amount of each check. All of the checks were returned unpaid, and there was testimony that the accused did not have, and had never had, any account with the bank on which the checks were drawn. Accused was contacted by the victims when the checks were returned unpaid and asserted that he was sure he had money in the bank and that a mistake had been made. Approximately one month after the first negotiation of the checks, the loss suffered by the victims was made good by accused's wife.

Accused testified that the checks were drawn in the honest belief that he had a checking account with the named bank. He asserted, and in this he was corroborated by his sister, that on November 27, 1952, she had agreed to open a checking account in accused's name at the Kanawha Valley Bank in the amount of $500.00. Subsequently, she "used her own judgment" and sent the money to accused's estranged wife. The accused was not informed of this diversion of the money, and after waiting several days to allow time for the opening of the account, he negotiated the first of the series of checks which form the basis of the specifications under consideration here.

The accused had formerly had checking accounts in other banks and knew that a signature on file with the bank was a prerequisite to the establishment of an account. However, several of his relatives worked at the Kanawha Valley Bank, his deceased mother's estate recently had been settled at that bank, and his signature was on file in connection with the settlement of that estate.

We are satisfied that the evidence is sufficient to prove the offenses charged, especially in view of the fact that the accused had on one occasion previous to the acts charged here, drawn a

**432**

check on the Kanawha Valley Bank which he knew had been refused because he had no account with that institution. Conceding that the evidence is sufficient to support the conviction, we are satisfied that the defense of mistake of fact as to the checks drawn on the one bank was raised reasonably by the evidence. Our duty then is to determine whether the law officer's instructions to the court-martial were sufficient to present the offered defense.

The law officer undertook to instruct on the defense of mistake of fact and did so in the following manner:

"Now, the defense has introduced by deposition and through the testimony of the accused evidence to show that at the time of the alleged offenses as set out in Specifications 1 through 10 of Charge II, that is, the offense of larceny, the accused was under the mistaken belief that he had money in the Kanawha Valley Bank to cover any checks at the time of making and at the time of presentment for payment.

"With respect to this evidence, the court is advised that if the accused was laboring under such ignorance or mistake and if this ignorance or mistake was honest and reasonable under the circumstances he cannot be found guilty of larceny for the law recognizes this as a defense. However, it is essential to this defense that his ignorance or mistake as it may be, be both honest and reasonable under the circumstances. If the accused's ignorance or mistake was not reasonable under the circumstances, that is, if it was the result of carelessness or fault on his part, it is not a defense.

"The burden is on the prosecution to establish the accused's guilt by legal and competent evidence beyond a reasonable doubt. Consequently, unless you are satisfied beyond a reasonable doubt that the accused was not reasonably and honestly in ignorance—I'm sorry—if you are satisfied beyond a reasonable doubt that the accused was honestly and reasonably under the mistaken belief that there was sufficient funds deposited to his account in the Kanawha Valley

Bank on which he could write checks which would be honored upon presentment you must acquit the accused."

Basic to a consideration of the accuracy of the instruction given is a determination of the nature of the defense of mistake of fact. To arrive at a proper solution, we must determine whether ignorance or mistake of fact is a defense in military law, and, if so, whether the ignorance or mistake of fact must be honest and reasonable—either or both. The present Manual for Courts-Martial, United States, 1951, has given some consideration to the problem presented here. There are two paragraphs dealing with the defense; the first is general in its scope; the second applies the rule in larceny. Paragraph 154a(3) provides as follows:

"Unless otherwise provided (expressly or by implication) by the law denouncing the offense in question, ignorance or mistake of fact will exempt a person from criminal responsibility if it is an honest ignorance or mistake and not the result of carelessness or fault on his part."

Paragraph 200a(6) has this to say about intent to steal in larceny:

". . . Also, a person who takes, obtains, or withholds the property of another, believing honestly and reasonably, although mistakenly, that he or the person for whom he is acting has a legal right to acquire or retain the property, is not guilty of an offense in violation of Article 121."

An analysis of these provisions will assist in arriving at a proper conclusion. In terms, they provide that ignorance or mistake of fact will be a defense to larceny if the mistaken belief is (a) honestly entertained, and (b) based upon reasonable grounds. We believe that implicit in the provisions is the further requirement that the mistaken belief must be of such a nature that the conduct would have been lawful had the facts been as they were reasonably believed to be. An apt illustration of that requirement is found in the case of United States v. Powell, 24 F Supp 160 (DC Tenn 1938), hold-ing that a kidnaper who transports his victim across a state line is guilty of a Federal offense even though he was mistaken as to the location of the boundary line, and unaware of crossing it.

The requirement that a mistaken belief must be an honest mistake requires little discussion. When one honestly believes he is taking property rightly, the criminal intent necessary to establish larceny is absent. However, that is not so if the possession is obtained by a known fraudulent or dishonest pretense as that means of gaining possession supplies the felonious intent. However, whether a mistake of fact is a defense, if the mistake is not reasonable under the circumstances, is not so easy of resolution.

In discussing the offense of larceny, and the specific intent involved therein, paragraph 200a(6), page 360, of the present Manual for Courts-Martial, supra, speaks clearly to the effect that a person who takes, obtains, or withholds the property of another, believing honestly and reasonably, although mistakenly, that he or the person for whom he is acting has a legal right to acquire or retain the property, is not guilty of an offense in violation of Article 121, supra. However, in discussing the form of larceny by false pretenses, the Manual language (paragraph 200a(5), page 359) stresses honest belief, but is singularly silent about reasonableness or negligence. Thus:

". . . The pretense must be in fact false when made and when the property is obtained, and it must be knowingly false in the sense that it is made without an *honest* belief in its truth. A false pretense is a false representation of past or existing fact. In addition to other kinds of facts, the fact falsely represented by a person may be his power or authority to effect a certain result, his opinion, or his intention. Consequently, one who represents that he presently intends to perform a certain act in the future, but who at the time of his representation does not *honestly* intend to perform the act, makes a

**433**

false representation of an existing fact—his intention—and thus a false pretense. For example, a person makes such a false pretense by uttering a check made by him if at the time of the uttering he did not *honestly* intend to have sufficient funds in the bank available to meet payment of the check upon its presentment for payment in due course." [Emphasis supplied.]

Interpreted literally, it would seem that the Manual framers intended to apply a different standard to the defense of mistake of fact in the ordinary offense of larceny and in larceny by false pretenses. We believe there should be no difference as between the two and that the true rule in both instances is that an honest mistake would be sufficient defense to the charge, without regard to the reasonableness of the mistake. That this interpretation is sound for all forms of larceny is indicated by legal precedents in civilian jurisdictions.

An apt statement of the nature of the offense of larceny may be found in Morissette v. United States, 342 US 246, 96 L ed 288, 72 S Ct 240 (1952), wherein Justice Jackson served as the organ of the Supreme Court and said (page 260):

"Stealing, larceny, and its variants and equivalents, were among the earliest offenses known to the law that existed before legislation; they are invasions of rights of property which stir a sense of insecurity in the whole community and arouse public demand for retribution, the penalty is high and, when a sufficient amount is involved, the infamy is that of a felony, which, says Maitland, is '. . . as bad a word as you can give to man or thing.' State courts of last resort, on whom fall the heaviest burden of interpreting criminal law in this country, have consistently retained the requirement of intent in larceny-type offenses. If any state has deviated, the exception has neither been called to our attention or disclosed by our research."

The requirement of a specific intent is found in military law as well as in the civilian sphere. A court-martial must find, as a necessary predicate for a conviction of larceny, that the accused intended, at or after the time of the taking, permanently to deprive the owner of the property in question. Article 121, Uniform Code of Military Justice, supra. Because that intent is required to make out the offense of larceny, it is commonly held that there is no such thing as a negligent larceny. An honest ignorance or mistake of fact may be a defense even though either was due to carelessness. People v. Watson, 154 Misc 667, 278 NYS 759 (1935), affd 282 NYS 235 (1935). The rule is stated somewhat differently in Michigan, but it is to the same effect. "The felonious intent is an essential and inseparable ingredient in every larceny, and if a person takes property under a claim of right, however unfounded, he has not committed larceny." People v. Hillhouse, 80 Mich 580, 586, 45 NW 484, 486 (1890), quoted as controlling in People v. Shaunding, 268 Mich 209, 255 NW 770 (1934). Nor are these isolated holdings. See, for example, State v. Goldsberry, 160 Kan 138, 160 P2d 690, 697 (1945), holding "The fact that the party taking the property may have been mistaken in his claim to ownership does not alter the rule provided he honestly believed that the property belonged to him"; Dean v. State, 41 Fla 291, 26 So 638 (1899), announcing the rule that an honest claim of right to the property is a defense to a charge of larceny, ". . . however puerile or mistaken the claim may in fact be"; and People v. Devine, 95 Cal 227, 30 P 378 (1892), stating "One cannot intend to steal property which he believes to be his own. He may be careless, and omit to make an effort to ascertain that property which he thinks his own belongs to another; but so long as he believes it to be his own he cannot feloniously steal it."

Of more persuasive influence on our problem here are civilian authorities dealing with false pretenses and the nature of the representation which must be shown to sustain an allegation of this variant of larceny. The general rule may be found stated in 22 Am Jur, False Pretenses, § 58, which dis-

cusses worthless checks. That paragraph provides:

"*Intent and Knowledge.*—In accord with the general rule which establishes a fraudulent intent as an essential element of the crime of false pretenses, in order to obtain a conviction of the crime of obtaining property by false pretenses for having obtained property through a worthless check, the prosecution must prove that the accused was motivated by a fraudulent intent in inducing the deceived to part with his property and had knowledge that the instrument would not be honored on presentation for payment. The requirement in respect of fraudulent intent is met by proof that the drawer of a check obtained money thereon when he had no money in the bank and no reason to believe that the check would be paid when presented at the bank."

While not all jurisdictions adhere to the same view, an opinion which appears to announce a doctrine consistent with the Manual statement on larceny by false pretenses may be found in State v. Pickus, 63 SD 209, 257 NW 284 (1934). In that case the trial judge in the course of his instructions told the jury that "making a statement that is in fact false recklessly without information to justify a belief in its truth is equivalent to making a statement knowing it to be false." The court condemned as prejudicially erroneous this instruction, saying:

". . . whatever may be the significance of the word 'recklessly' standing alone, in the court's instruction now under consideration, it is either defined or modified and qualified by the immediately following words, 'without information to justify a belief in its truth.' By that language the court clearly authorized and indeed almost required the jury to disregard the actual state of mind of the appellant at the time he made the representation claimed to be false and imposed upon appellant in a criminal case the objective standard which is frequently applied to determine civil liability in tort. Under that instruction, if the jury or some of the jurors entertained the view that the representation made by appellant was false, that appellant believed the representation when he made it, but that appellant arrived at his belief on information which would not justify a reasonably prudent man in forming the same belief—in other words, if appellant was rash or careless or foolish, although honest, in arriving at the belief which in fact he entertained—then it would be the duty of the jury to hold appellant criminally liable."

The Pickus case, supra, was expressly followed in State v. Lien, 72 SD 94, 30 NW2d 12, a case where the allegedly false pretense consisted of the giving of a worthless check.

In Carpenter v. State, 24 Ala App 468, 136 So 491, 492 (1931), it was held that "if in good faith and with no intent to defraud the defendant made the statement he had sufficient funds in the bank to cover said check and it afterwards developed that he was mistaken and the amount to his credit lacked a little of meeting said check, there could be no conviction upon this charge."

Whenever a representation is made which is in fact false, the mental attitude of he who makes it must fall within one of three categories. (1) He may know or believe that the representation is false. (2) He may have neither any knowledge nor any belief as to its truth or falsity. (3) He may believe the representation to be true. The facts of the instant case make only the first and third applicable. Certainly, as to the first classification it must be said that the representation is designedly false and, if established, is sufficient to support a conviction of larceny. Not so as to the third category, as there can be no criminal intent if the belief is honest. The statute seeks to punish the man who deprives another of his property permanently by means of a representation he knows to be false. It cannot be extended to cover the case of a man who honestly believes his representation to be true, even though that belief is erroneous, or not justifiable, or ill-founded, or based upon information which a reasonably prudent man would consider insufficient. That

**435**

would be tantamount to substituting civil negligence for criminal intent.

In certain types of cases situations are presented where the congressional enactment and the Manual which implements it impose a criminal sanction despite the fact that a specific criminal intent may not be present. Compare United States v. Balint, 258 US 250, 66 L ed 604, 42 S Ct 301 (1922) and United States v. Behrman, 258 US 280, 66 L ed 619, 42 S Ct 303 (1922), with Manual for Courts-Martial, supra, paragraph 213a, page 382.

In other situations, military law has authorized a criminal sanction for the doing of an act which is merely negligent. United States v. Kirchner, 1 USCMA 477, 4 CMR 69. In the latter instance the Congress, the Manual draftsmen, and this Court have adopted a reasonable man test (United States v. Perruccio, 4 USCMA 28, 15 CMR 28). But that test cannot be applied when the offense charged requires a specific intent before it becomes punishable. A hypothetical case will suffice to show the undesirable consequences which would flow from an application of the reasonable man test to an act involving specific intent. If we assume an individual asported property, honestly believing it belonged to him, but in fact it did not, and if we further assume an ordinary careful and prudent man would have made further inquiry and arrived at a different belief, then under the reasonable man test, the asporter is guilty of larceny. A specific criminal intent would thus be inferred from facts and circumstances which would not show the belief of the taker but would merely be sufficient to establish what a reasonable person ought to have believed. That may be good civil law but a crime measured by that yardstick would lack the scienter required to make out larceny.

Tested by the principles set out above, the instruction given in the present case is erroneous. It ▇▇▇▇ permitted the court-martial to find the accused guilty even though he honestly believed that the checks would be paid upon presentation, provided the members of the

court-martial concluded that he arrived at that belief without obtaining the information which would be gathered by a reasonable man before the latter would negotiate a check. Certainly, it was for the court-martial to say whether accused knew of the falsity of his representation. If the information upon which he founded his belief was lacking in substance, that would be a circumstance which, with others, might cause the triers of fact to find that he obtained the money with a criminal intent. But this instruction permits the same finding even though the accused honestly believed his checks would be paid when presented. This is a view which Article 121 of the Code, supra, paragraph 200a(5) of the Manual for Courts-Martial, supra, and most reliable authorities seem to reject.

Because of another error in the law officer's instructions concerning the defense of mistake of fact, ▇▇▇▇ we need not base our reversal in this case alone on the error discussed previously. The instruction given discloses that while informing the court-martial on the offered defense, the law officer expressly stated that the accused must establish his claimed mistake of fact beyond a reasonable doubt. While perhaps inadvertent, the instruction effectively shifted to the accused the burden of establishing that he lacked the criminal intent alleged. This instruction was erroneous, for the Government always bears the burden of establishing accused's guilt beyond a reasonable doubt, Minner v. United States, 57 F2d 506, 512 (CA10th Cir 1932). The Government argues that this erroneous instruction was effectively cured by another portion of the law officer's charge which correctly stated the legal formula concerning reasonable doubt and burden of proof. However, when two instructions are mutually inconsistent we cannot determine which one was accepted by the court-martial, nor can we say with fair assurance that the finding would not have been different had the burden of proof on this question been placed where it belonged. Price v. United States, 200 F2d 652 (CA5th

436

Cir 1953); Drossos v. United States, 2 F2d 538, 539 (CA8th Cir 1924).

It is urged upon us that counsel for the accused waived his right to have these errors considered on appeal by his failure to take an exception to the instructions as given. We would give this contention more serious consideration if the last ground was the only error in the record, as a request for clarification would have eliminated that defect. However, the confusion pointed out in the first part of this opinion results from the language found in the Manual for Courts-Martial, United States, 1951. In view of the fact that the instruction was framed in the wording of the Manual, and because the instructional error completely confused the one fundamental standard by which the sole issue in the case was to be determined, we feel constrained to review the error. Were we to do otherwise, a miscarriage of justice would be apparent.

The decision of the board of review is reversed. The record is returned to The Judge Advocate General of the Army for action not inconsistent with this opinion.

Chief Judge QUINN concurs.

BROSMAN, Judge (concurring):

Under my interpretation of its language, I am able to concur outright in the principal opinion. As I understand it, that opinion holds no more than that an accused may not be found guilty of larceny by check unless the Government establishes that he did not possess an honest belief—however unreasonable—that the check he uttered would be paid upon presentment. I am sure, too, that nothing in Judge Latimer's opinion immunizes from criminal responsibility one who falls within the second of the three categories he sets out—that is to say, one who utters a check without any sort of knowledge or belief as to the truth or falsity of his representation. In my opinion the result as to such an individual should be the exact opposite of that reached in the instant case.