UNITED STATES, Appellee,

v.

Specialist Five, Dennis J. LAWTON, 035–38–0864, United States Army, Appellant.

CM 444425.

U.S. Army Court of Military Review.

24 Jan. 1985.

---

Captain Bernard P. Ingold, JAGC, argued the cause for the appellant. With him on the brief were Lieutenant Colonel Arthur L. Hunt, JAGC, Captain Thomas J. Feeney, JAGC, and Captain Barbara M. Lederer, JAGC.

Captain Robert C. Erickson, Jr., JAGC, argued the cause for the appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Adrian J. Gravelle, JAGC, and Major Thomas J. Leclair, JAGC.

Before MARDEN, PAULEY, and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, appellant was convicted by a court composed of members of three specifications each of falsifying official records and submitting false travel vouchers, in violation of Articles 107 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 907 and 932. His approved sentence provides for a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $382.00 pay per month for six months, and reduction to Private E–1.

### I

In 1972, two years prior to entry on active duty, appellant was a 17-year-old high school student, the dependent of a sergeant major stationed in Berlin, West Germany. His high school sweetheart was 15½ year old Dawn Richardson, also a military dependent living in Berlin. Over the next two years, this teenage couple developed a romantic relationship that not only brought them to the brink of marriage, but also earned them the angry disapproval of their respective parents. By March 1974, they had intermittently moved from their parents' homes, shared hotel rooms and planned to marry. However, their nuptials were thwarted by their inability to obtain parental consent and by their unwillingness to suffer the loss of their dependent status with its attendant benefits.

In April 1974, appellant enlisted in the Army to begin basic training at Fort Dix, New Jersey. Dawn also returned to the United States—first, to live with relatives; then, to Fort Dix where she stayed in the installation's guest quarters until appellant

completed training in June. Again, the couple attempted to marry. This time their attempt was frustrated because of appellant's father who unexpectedly arrived at Fort Dix to prevent his marriage to Dawn. To avoid a confrontation, appellant told his father that his marriage to Dawn was a *fait accompli.* Conceding there was nothing he could do about it, appellant's father drove them to Rhode Island where they remained for several days with appellant's family. Subsequently, the couple flew to Missouri where they stayed with Dawn's relatives prior to driving to appellant's new duty assignment in Alabama.

Between June and November 1974, appellant and Dawn resided first in Alabama and then in Texas while he completed advanced training. During this period, they lived together, jointly entered into contracts, opened a joint bank account, and generally held themselves out as husband and wife. Appellant submitted a false marriage certificate from New Jersey to military authorities to establish that he was married to Dawn. Although the couple considered having a marriage ceremony in Alabama, they were unable to do so without the permission of appellant's parents, something he could not obtain.

In late 1974, the couple began a nine month separation when appellant was assigned to West Germany. Dawn resided with her family in the United States until she joined him in August 1975. For the next two and a half years, they lived in Germany where Dawn had two children. In 1976, appellant executed a last will and testament in which he acknowledged Dawn as his wife and made her his principal beneficiary. Thereafter, the family moved to Fort Lee, Virginia, where they remained until May 1981 when appellant was transferred to Fort Sam Houston, Texas, to again attend a military school. Instead of accompanying him, Dawn and the children went to Fort Bragg, North Carolina, where she lived with her sister. Nevertheless, appellant submitted a voucher for her travel to Texas believing that she would eventually join him. This never occurred since Dawn changed her mind, apparently because of marital problems.

In November 1981, as appellant was leaving for a second assignment to Germany, Dawn told him she would not accompany him because she had married another serviceman named Joseph Best. Appellant testified that he immediately obtained legal advice from an attorney at Fort Gordon, Georgia, who informed him that Dawn's marriage to Best was invalid. The attorney opined that appellant and Dawn had a common law marriage and that in the absence of a divorce, they remained married and Dawn's marriage to Best was void. Appellant relayed this information to Dawn prior to his departure for Germany.

In February 1982, Dawn, who was now living in Augusta, Georgia, called appellant, told him she was "divorcing" Best and would join him in Germany. In May 1982, she traveled from Georgia to Germany, under military orders obtained by appellant which listed her name as Dawn Lawton. Appellant submitted a voucher for her travel from Texas to Germany. While in Germany, Dawn's dependent identification card, medical and employment records reflected her name as Dawn Best. The record indicates that she used Best's name to obtain a passport prior to traveling to Europe. She also told a military policeman investigating her involvement in an automobile accident that she was married to Joseph Best but was in the process of divorcing him.

Exhibits introduced during the trial reflect that, in his last will and testament, executed in 1976, appellant averred that he was a resident of Rhode Island. This is also shown in the DA Form 2–1 contained in his personnel file. However, his military pay records indicate Texas as his state of domicile.

Appellant's conviction of five of the specifications rests in whole or in part on the court's finding that he misrepresented to military authorities that he was married to Dawn Richardson Lawton, also known as Dawn Best. The Article 107 specifications allege that he fraudulently obtained mili-

tary identification cards and command sponsorship in Germany for Dawn Lawton. Two of the Article 132 specifications allege that he fraudulently made, used and presented for payment travel vouchers on behalf of Dawn Lawton while misrepresenting that she was his wife. One of these also alleges that appellant submitted false information as to Dawn Lawton's travel to Texas in 1981 in order to obtain reimbursement in excess of that to which he was entitled. The remaining specification alleges a similar fraud in connection with Dawn Lawton's travel to Germany in 1982 but does not allege appellant misrepresented she was his wife.

The military judge instructed the court that appellant could not be found guilty of five of the offenses if he and Dawn were married at common law as provided for under the law of Alabama. He then gave detailed instructions as to Alabama's law governing common law marriages. However, he gave no instructions as to whether appellant could avail himself of the defense of mistake of law or fact based on his belief he was married.

## II

Appellant contends, *inter alia*, that the military judge's instructions were incomplete and misleading in failing to properly advise the court members as to whether he and Dawn were married at common law. He also avers that even if they were not married, the judge erred in failing to instruct on the defense of mistake. We agree that the military judge's instructions were defective.

■ Military law recognizes the legitimacy of marriages by service personnel if valid in the state in which they are contracted. *United States v. Richardson*, 4 CMR 150 (CMA 1952).[1] This is true whether the marriage complies either with state licensing or ceremonial requirements or ap-

plicable rules governing common law marriages. The evidence presented in the instant case clearly establishes that appellant and Dawn were not married under the licensing authority of any state or jurisdiction. However, over a period of seven years they resided in or claimed to be domiciliaries of several states and the Republic of Germany, jointly entered into legal transactions, had children, and otherwise held themselves out as husband and wife to family and associates alike. As such, the possibility that appellant was married at common law in three of those jurisdictions in which common law marriages are recognized cannot be ignored. *See Piel v. Brown*, 361 So.2d 90 (Ala.1978); *Souza v. O'Hara*, 121 R.I. 88, 395 A.2d 1060 (1978); and *DeShazo v. Christian*, 191 S.W.2d 495 (Tex.Civ.App.1945). Appellant's marital status was a critical element in establishing his guilt of most of the offenses. Therefore, instructions concerning the law of common-law marriage for each of those states should have been given *sua sponte*. Paragraph 73, Manual for Courts-Martial, United States, 1969 (Revised edition) [hereinafter cited as MCM]. Since the judge's instructions were limited to the law of Alabama, prejudicial error was committed.[2]

## III

■ Furthermore, even if appellant was not married, there was evidence indicating that he honestly believed he was. His trial testimony and his pretrial behavior, especially after obtaining a lawyer's opinion that he was married to Dawn at common law, are sufficient to raise an affirmative defense of mistake to specific intent crimes such as those charged here. *See United States v. McFarlin*, 19 M.J. 790 (ACMR 1985); para. 216*i* and *j*, MCM. Under the circumstances, failure to instruct *sua sponte* on that defense is reversible error. *United States v. Mathis*, 35 CMR 102 (CMA 1964). Although there was evidence

---

1. *See also,* U.S. Dep't of Defense, Military Pay and Allowances Entitlement Manual, para. 30233 (Change 79, 31 Jul 1984).

2. We are not unmindful of the difficulties faced by military judges who must try a case in remote locations and with extremely limited legal research facilities. This case illustrates such a situation.

to contradict appellant, instructions as to whether his belief was honest should have been given. *United States v. Rowan*, 16 CMR 4 (CMA 1954). Accordingly, we must set aside those findings of guilty which are dependent upon appellant's marital status albeit we may affirm those findings of guilty not so affected.

 Although we could permit a rehearing on the charges set aside, we decline to do so in the interest of judicial economy. We have examined the approved sentence in light of the foregoing errors and the entire record and determine that the bad-conduct discharge is appropriate. The *mens rea* of the remaining specifications involves misrepresentation of personal information to military authorities for appellant's own convenience or profit. His misconduct in this regard is sufficiently reflective of his moral turpitude and irresponsibility to warrant a punitive discharge. However, we also deem it appropriate to approve only a portion of the confinement and forfeitures.

The findings of guilty of Charge I and its specifications, Specification 2 of Charge II, and Additional Charge I and its Specification are set aside and those charges are dismissed. Only so much of the findings of guilty of Specification 1 of Charge II and Charge II, as finds that appellant for the purpose of obtaining the approval, allowance, and payment of a claim against the United States of an amount in excess of $200.00, did, at Fort Sam Houston, Texas, an installation under federal jurisdiction, on or about 27 May 1981, make and use a certain writing, to wit: Department of Defense Form 1351-4, Voucher or Claim for Dependent Travel, which said writing, as he, the said Specialist Five Dennis J. Lawton, then knew contained a statement that Dawn Lawton had traveled from 436 B Okinawa Road, Fort Lee, Virginia, to 12311 Old Spanish Trail, San Antonio, Texas, which statement was false and fraudulent in that the said Dawn Lawton did not accompany the said Specialist Five Dennis J. Lawton to Fort Sam Houston, Texas, and was then known by the said Specialist Five

Dennis J. Lawton to be false and fraudulent, are affirmed. The remaining findings of guilty are affirmed. Only so much of the sentence as provides for a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $382.00 pay per month for three months and reduction to Private E-1 is affirmed.

Senior Judge MARDEN and Judge PAULEY concur.