**UNITED STATES, Appellee,**

v.

**Sheridon H. GROVES, Major U.S. Army, Appellant.**

No. 51,989.
CM 444650.

U.S. Court of Military Appeals.

March 16, 1987.

For Appellant: Colonel Brooks B. La Grua, Lieutenant Colonel Paul J. Luedtke, Major Eric T. Franzen, Captain Bernard P. Ingold (on brief); Colonel William G. Eckhardt, Lieutenant Colonel Arthur L. Hunt, Captain Thomas J. Feeney, Captain Pamela G. Montgomery.

For Appellee: Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Gary F. Roberson, Captain Patrick J. Cunningham (on brief); Lieutenant Colonel Thomas M. Curtis.

*Opinion of the Court*

COX, Judge:

This case concerns the correctness of the military judge's decision to admit into evidence a pretrial statement made by appel-

lant's putative wife, Nanely.[1] We hold that it was error to admit the statement and that the possibility of prejudice was sufficient to require reversal. Art. 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

I

In July 1980, appellant, an Army doctor, applied for and received $443.40 for "dependents' travel pay and dislocation allowance." These actions formed the basis of his conviction, contrary to his pleas, of larceny and making a false and fraudulent claim against the Government.[2] Invoking prior decisions of this Court, the Court of Military Review concluded that the two specifications were multiplicious for findings. Therefore, it consolidated [3] the two specifications and dismissed the separate false-claim specification. In all other respects, that court affirmed. 19 M.J. 804, 807 (1985).

█ The precise focus of the trial was whether appellant intended, at the time of his claim and receipt of payment, to defraud the Government. The facts are quite involved. Suffice it to say the Government's theory was that appellant and Nanely were not married, but merely had a living arrangement, and that they never had the intent to be married. In the Government's view, therefore, it was fraudulent for appellant to claim travel and dislocation benefits for Nanely and her children of a prior marriage. The defense's theory was that appellant and Nanely had achieved—or at least appellant honestly believed they had achieved—a state of common-law marriage under the laws of Texas.[4] According to appellant, therefore, he lacked the intent to defraud the Government, if indeed his claim was not totally legitimate. There is no question that larceny is a specific-intent offense and making a false and fraudulent claim is a specific-knowledge offense. Paras. 200*a*(6) and 211 *a*, Manual for Courts-Martial, United States, 1969 (Revised edition); *see also* paras. 46*b*(1) and 58*b*(1), Part IV, Manual for Courts-Martial, United States, 1984. Thus, either appellant's actual marriage or his honest (subjective) belief that he was married would constitute a complete defense to the charges. *United States v. Ward*, 16 M.J. 341, 345–46 (C.M.A.1983); *United States v. Sicley*, 6 U.S.C.M.A. 402, 20 C.M.R. 118 (1955); *United States v. Rowan*, 4 U.S.C.M.A. 430, 16 C.M.R. 4 (1954).

Nanely was called as a witness in rebuttal by the Government. She, however, declined to testify against appellant, on the

---

1. The granted issue is:

   WHETHER APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT AN ADVERSE WITNESS BY THE ERRONEOUS ADMISSION OF PROSECUTION EXHIBIT 27, A STATEMENT GIVEN BY NANELY GROVES TO CID AGENTS.

2. Larceny and *making* false and fraudulent claims against the Government, of which appellant was convicted, are proscribed by Articles 121 and 132, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 932, respectively. Appellant was acquitted of separate specifications of *presenting* a false and fraudulent claim in connection with the same travel and dislocation allowance, and of engaging in conduct unbecoming an officer by falsely representing his marital status, thereby obtaining family quarters for a 2-year period. These latter allegations were charged as violations of Articles 132 and 133, UCMJ, 10 U.S.C. §§ 932 and 933, respectively. Appellant's approved sentence ex-

tends to dismissal from the service, confinement for 3 months, and total forfeitures.

3. *See United States v. Sorrell*, 23 M.J. 122 n. 1 (C.M.A.1986).

4. Common-law marriage between a man and a woman is recognized under the laws of Texas. As the military judge noted, the existence of such a "marriage ... may be proved by evidence that: ... [the couple] agreed to be married, and after the agreement they lived together in ... [Texas] as husband and wife and there represented to others that they were married." Further, "[i]n any proceeding in which a marriage is to be proved under ... [the foregoing subsection], the agreement of the parties to marry may be inferred if it is proved that they lived together as husband and wife and represented to others that they were married." Tex.Fam. Code Ann. §§ 1.91(a)(2) and (b), quoted in *Estate of Claveria v. Claveria*, 615 S.W.2d 164, 166 n. 3 (Tex.1981).

grounds both of marital privilege [5] and her Fifth-Amendment right not to be a witness against herself.[6] The military judge ruled that availability of the marital privilege depended upon Nanely's marital status *at the time of trial.* Based on a preponderance of the evidence, he opined that Nanely was indeed entitled to claim the privilege at the time of trial. However, he formally accepted her refusal to testify and excused her as a witness on Fifth-Amendment grounds.

Thereafter, Nanely's pretrial statement was admitted under Mil.R.Evid. 804(b)(4), 1969 Manual, *supra* (*"Statement of personal or family history"*), over defense objection, as a prosecution exhibit. No facts surrounding the taking of the statement are of record, save for those appearing on the face of the document. However, there seems to be no doubt that it was taken by a Criminal Investigation Command (C.I.D.) agent as part of the investigative process which led to the instant charges against appellant. The statement was taken some two and one-half years after the claim and payment occurred. According to the statement, Nanely described her relationship with appellant as that of "close friends." She specifically denied being married to appellant, holding herself out as appellant's wife, or sharing a bedroom with appellant. She did, however, admit living at appellant's residence at Fort Hood, Texas, from July 1980 (the time of the claim and payment) to February 1983 (the date of the interview), except for one absence of 5 to 6 months and several other brief absences.

## II

■ Mil.R.Evid. 804 is applicable in cases where the hearsay declarant is "unavailable." The rule provides, in part:

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

\* \* \* \* \* \*

(4) *Statement of personal or family history.* (A) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or (B) a statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

There is no doubt that Nanely was unavailable within the meaning of the rule, in view of her successful invocation of the privilege against testifying. Mil.R.Evid. 804(a)(1).[7] It is apparent, therefore, by the terms of the rule, that Nanely's statement qualifies either (A) as a statement regarding her own marriage or (B) as a statement regarding appellant's marriage.

The declaration concerning family history or pedigree is among the oldest of the common-law hearsay exceptions. 5 Wigmore, *Evidence* § 1480 at 363 (Chadbourne rev. 1974). However, at common law, in order to be admissible, such a declaration

---

5. With certain exceptions not pertinent here, Mil.R.Evid. 504(a), Manual for Courts-Martial, United States, 1969 (Revised edition), provides: "A person has a privilege to refuse to testify against his or her spouse."

6. Evidently, throughout the course of her relationship with appellant, Nanely continued to receive personal benefits from the Veteran's Administration and, possibly, the Social Security Administration as a result of the war-related death of one of her previous husbands. Presumably, the basis for her assertion of a Fifth-Amendment right was that, if she were required

to testify about her marital status, she might have incriminated herself for defrauding these other agencies, to which she continued to represent herself as being single and, thus, eligible to receive benefits.

7. That rule provides:

"Unavailability as a witness" includes situations in which the declarant ... is exempted by ruling of the military judge on the ground of privilege from testifying concerning the subject matter of the declarant's statement.

had to have been made before the controversy arose because "declarations made during the course of a controversy ... [were] regarded as lacking in the guarantees of trustworthiness." Wigmore, *supra*, § 1483 at 374. In contrast, the Federal and Military Rules of Evidence have broadened the common-law rule in several respects, most pertinently in abolishing the requirement that the statement occur before the controversy arose. *See* 4 *Weinstein's Evidence* Para. 804(b)(4)[01] (1979); S. Saltzburg, L. Schinasi, and D. Schlueter, *Military Rules of Evidence Manual* 683 (2d ed. 1986). In part, it is this ability to modify the hearsay rule that necessitates separate analysis under the Confrontation Clause. *See Ohio v. Roberts,* 448 U.S. 56, 62, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980); *United States v. Hines,* 23 M.J. 125, 128 (C.M.A.1986). Thus, the question is whether the statement is also admissible under the Confrontation Clause.[8]

■ In *Hines,* we recently outlined our general understanding of the guarantees secured by the Confrontation Clause. Absent the preferred "face-to-face confrontation," we summarized them as requiring "that ... [out-of-court] statements bear 'indicia of reliability' such that 'there is no material departure from the reason of the general rule.'" 23 M.J. at 131. Nanely's out-of-court statement fails to meet this standard in several respects. First, the record is devoid of information relating to the process of taking the statement. *See United States v. Barror,* 23 M.J. 370 (C.M.A.1987). Second, no analysis was undertaken on the record of the factors purportedly indicating reliability. *See generally United States v. Hines, supra.* Third, the statement must be viewed with inherent suspicion due to the significant possibility that it was a product of Nanely's own self-interest. *Cf. Lee v. Illinois,* —— U.S. ——, 106 S.Ct.

2056, 90 L.Ed.2d 514 (1986). Fourth, as indicated, the *"Statement of personal or family history"* exception to the hearsay rule, as described in Mil.R.Evid. 804(b)(4), is a recent modification of the common-law rule. Thus, evidence admissible under the rule does not fall into that presumptively reliable category of "firmly rooted hearsay exception[s]," so as to obviate the need for a reliability analysis. *Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. Fifth, the falsity of the statement, in at least one material respect, must be taken as established.[9] In view of these shortcomings, we conclude that the statement's reliability was not established sufficiently to warrant its admission consistent with the Confrontation Clause.

■ On the other hand, these very doubts about the reliability of the statement, as well as its remoteness in time and the fact that it related only indirectly to appellant's state of mind, tempt us to speculate whether the military judge—the finder of fact—could have accorded the statement any weight at all and, thus, whether appellant was prejudiced by its admission. Unfortunately, there is no indication on the record as to how much weight the evidence was given. Further, since trial counsel, the Court of Military Review, and appellate government counsel have all stressed not only the reliability of the statement but also its peculiar probativeness, we cannot discount the possibility that the military judge may also have given it more than passing note. In addition, much of the Government's other evidence related either to Nanely's conduct and state of mind, or to appellant's conduct and state of mind long after the claim and receipt of payment. Thus, it is difficult to single out Nanely's statement as being less influential

**8.** "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI.

**9.** Nanely's statement recites that she and appellant did not "go on the pretext of husband and

wife." However, in the face of overwhelming evidence, the Government, quite reluctantly, stipulated that Nanely and appellant "have held themselves out as husband and wife to members of their social group since 16 July 1980."

than most of the other evidence adduced against appellant.

Due to the complexity and interrelationship of the evidence,[10] we think it impossible for this Court, or even the Court of Military Review with its broader factual review power (Art. 66(c), UCMJ, 10 U.S.C. § 866(c)) to assess accurately the likelihood of prejudice. *See* Art. 59(a).

The decision of the United States Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge SULLIVAN did not participate.

EVERETT, Chief Judge (concurring):

I have some doubt that Nanely's statement adequately complied with Mil.R.Evid. 804(b)(4), Manual for Courts-Martial, United States, 1969 (Revised edition). In any event, for the reasons cogently expressed by Judge Cox, I agree that it failed to meet the requirements of the Confrontation Clause. U.S. Const. amend. VI.

---

**10.** All evidence purporting to show that the "marriage" was a sham, if believed, tended to prove that Nanely's claims against the other governmental agencies [and conceivably appellant's dealings with the Internal Revenue Service (he filed as a single taxpayer during the years in question)] were legitimate. On the other hand, all evidence purporting to prove that the "marriage" was valid, if believed, tended to indicate that the claim against the Army was legitimate and that the claims against the other agencies were not.