# UNITED STATES

## v.

**Staff Sergeant Chester DANIELS, FR 257–96–3648 United States Air Force.**

### ACM 27079.

U.S. Air Force Court of Military Review.

Sentence Adjudged 22 April 1988.

Decided 6 April 1989.

Appellate Counsel for the Appellant: Colonel Richard F. O'Hair and Major Frank J. Spinner.

Appellate Counsel for the United States: Colonel Joe R. Lamport, Lieutenant Colonel Robert E. Giovagnoni and Major Carole W. Hanson.

Before HODGSON, HOLTE and PRATT, Appellate Military Judges.

## DECISION

PRATT, Judge:

Charged with rape and burglary, the appellant was found guilty, contrary to his pleas, of the lesser included offenses of attempted rape and unlawful entry by a general court-martial composed of members. His sentence, as adjudged and approved, includes a bad conduct discharge, confinement for one year, and reduction to airman basic.*

Both of the charges arose out of the following factual scenario, the recounting of which will assist in the discussion of assigned error.

In August 1987, the appellant and Sgt M (victim) were both TDY to Ramstein AB, Germany. During the late evening and early morning hours of 23–24 September, Sgt M was drinking and "running back and forth" between various dormitory rooms where parties were proceeding, including the room in which appellant was playing dominoes with several friends. At one point during the evening, appellant quietly commented to one or more of the domino players "I'm going to get me some of that" (or words to that effect), referring to Sgt M. Eventually, Sgt M returned to her room where she took off her clothes and slept naked under the covers of her bed. After the domino game ended, one of the participants, SSgt P, was passing by the door to Sgt M's room and decided to check on her. When there was no response to his knock, SSgt P opened the door a little and, with the crack of light from the hallway, saw appellant laying between the spread-eagled legs of Sgt M. From his brief observation, SSgt P observed appellant in an "upward forward motion" indicative of sexual intercourse and did not detect any movement by Sgt M. As SSgt P closed the door and headed toward the nearby building exit, appellant caught up with him and, apparently upset by the interruption, complained, "She was about to give it up to me." Several hours after these events, Sgt M had a .15 blood alcohol level. Beyond these facts, the court members were presented with two highly divergent accounts of what transpired.

---

* Subsequent to approving the sentence, the convening authority took supplemental action remitting that portion of the sentence that provided for a bad conduct discharge and confinement in excess of 6 months. Since this court's jurisdiction is determined by the approved sentence without regard to subsequent clemency action, this case is properly before us. Article 66(b)(1), UCMJ, 10 U.S.C.A. § 866(b)(1). *See United States v. Marsh*, 21 M.J. 616 (A.F.C.M.R.1985); 23 M.J. 262 (C.M.A.1986) (summary disposition) citing *United States v. Bullington*, 13 M.J. 184 (C.M.A.1982).

*Sgt M's version:* Earlier in this TDY, while talking with appellant in a secluded area, he had tried to kiss her and she had rebuffed him. On the evening in question here, although she spent considerable time visiting with the domino players, she never spoke much directly with appellant. She certainly never invited him to come to her room or in any way implied that she wished to have sex with him. When she went to bed, she is sure she closed her door but did not bother to lock it. After falling asleep, her next recollection is waking up and finding appellant laying on top of her, between her legs, trying to put his penis inside of her. Startled and scared, she stated, "What the f___ are you doing?" and "Get the f___ off of me." Appellant rolled off the bed, zipped his pants, and left the room.

*Appellant's version:* Earlier in the TDY, while talking with her in a secluded location, Sgt M asked appellant to kiss her and he did. After another kiss, Sgt M said, "This is not the right place or time." On the night in question, when she was present during the domino games, she continually gave appellant the eye and stared at him in a suggestive manner. On at least two occasions during the evening, Sgt M asked appellant to come visit her in her room later. After the dominoes game broke up, appellant had occasion to pass by Sgt M's room and noticed her door was open a little. Looking in, he noticed the right side of her body was exposed. He closed the door and went looking for SSgt P (with whom he had arranged to go somewhere). A few minutes later, passing by Sgt M's room again, he noticed that her door was slightly open once again. This time, appellant entered the room, went to the head of her bed, and called her name. Sgt M said, "Rip [appellant's nickname], is that you?" When he said "yes", she grabbed his arm, pulled herself up in bed a little bit, pulled him towards her, and started kissing him. While they were kissing, appellant inserted his finger in her vagina and she responded with movement of her lower body. Sgt M kicked the covers off and appellant got on top of her, unzipping his pants. As he started to take his penis out, the door opened and light from the hallway entered the room. Sgt M "jumped forward" and said, "Rip, get up". Appellant rolled off her, zipped his pants, exited the room, and confronted SSgt P (as described above).

On appeal, through briefs and oral argument, appellant raises three issues. The first issue, alleging factual insufficiency of the evidence, is resolved against the appellant. Our disposition of the second issue, below, precludes the need to address the third issue.

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY FAILING TO PROPERLY INSTRUCT THE COURT MEMBERS ON MISTAKE OF FACT, AN AFFIRMATIVE DEFENSE.

At trial, the military judge gave an instruction to the court members concerning the affirmative defense of mistake of fact. In essence, he instructed that, in order to serve as a defense to the offenses charged, a mistake of fact must be both honest and reasonable.

The appellant contends that the military judge's instructions were deficient in two respects: (1) that the instruction given was inaccurate and garbled, rendering it ineffective, and (2) that the military judge failed to instruct the court members on the different standard applicable to specific intent offenses.

The Government argues that, under the particular facts of this case, the issue of mistake of fact was not raised by the evidence. As a result, it is asserted, any arguable error in the unnecessary instruction is moot or at least harmless. The Government further contends that, even if the issue were found to have been raised, (1) the military judge was not required to give an instruction on mistake of fact as it applies to the lesser included offense of attempted rape, or (2) even if required, the failure of defense counsel to object to the instruction (or lack thereof) at trial constitutes a waiver under R.C.M. 920(f) since plain error is absent.

■ The threshold question, of course, is whether any mistake of fact instruction

was required in this case. It is now well established that mistake of fact as to the victim's consent is available as an affirmative defense to the offense of rape. *United States v. Taylor*, 26 M.J. 127 (C.M.A. 1988); *United States v. Carr*, 18 M.J. 297 (C.M.A.1984). However, before an accused is entitled to have the court instructed thereon, the evidence must reflect that the defense was reasonably raised. *United States v. Steward*, 18 M.J. 506 (A.F.C.M.R. 1984). A bald assertion by the accused is not enough. There must be some evidence of record from which the accused could perceive that the victim consented, and to which the factfinders might attach credit if they so choose. *United States v. Taylor, supra; United States v. Jackson*, 12 M.J. 163 (C.M.A.1981). The Government makes a persuasive argument that, under the state of the evidence in this case, there simply is no issue of mistake of fact. Instead, we have two distinct, and widely divergent, accounts of events which simply pose a factual issue of consent, unfettered by any possibility of mistake. *See United States v. Jones*, 10 U.S.C.M.A. 122, 27 C.M. R. 196 (C.M.A.1959). The appellant testified that he was specifically invited by Sgt M to come to her room and, when he did so and called her name, she asked, "Rip, is that you?" and proceeded to pull him down to her and initiate intimate, and clearly consensual, contact. Sgt M testified, to the contrary, that she did not utter any words of invitation and awoke from a state of sleep to find, much to her surprise, appellant laying on top of her. Where, the Government asks, is the possibility of mistake of fact?

The answer to that question can be found in the testimony of Dr. (Capt) Schmidt, the base psychologist, who testified as a prosecution witness in rebuttal. Dr. Schmidt was qualified, without objection, as an expert in the area of clinical neuropsychology which deals, in part, with the mental processes of the human body and memory as they interrelate with the factors of sleep and alcohol. After direct and cross examination by counsel on other issues, the following exchange between the military judge and the witness was generated, notably, by a question from a court member:

Q. Doctor, can a person in a drunken sleeping state do and say things without knowing or controlling their actions?

A. That's a difficult question, because part of it—it would depend what knowing means. At the time, they may indeed be aware and they may not, but knowing is such a difficult area. We all know people who have been drunk and have done things and they appear to know what they're doing and then later don't have a memory of it, so memory and knowing may be two different things. Drunken individuals often do things with only a shadow memory of what occurred.

Q. And then throw in the factor that you may have someone in a drunken state of sleep. Would that change that in any way?

A. Yes, it would, because again you have—I call it the never-never land between sleeping and wakening and it's what you sometimes—the alarm goes off, you try to answer the phone, and you finally discover it's the alarm. Alcohol would only complicate that response, so someone could appear to be responding in a normal fashion and yet have no real cognizance of what's going on.

In our opinion, this testimony raises the previously dormant issue of mistake of fact, at least as to the offense of rape. The initial question itself, coming as it did from a court member, can fairly be interpreted as suggesting that the court member was considering the possibility of unconscious responses by Sgt M as a means of resolving the conflict between her testimony and that of the appellant. Clearly, the testimony of Dr. Schmidt did nothing to render that consideration unreasonable *per se*. The military judge appears to have reached the same conclusion. During discussions concerning proposed findings instructions, the military judge asked defense counsel if he felt that the defense of

mistake of fact had been raised. When defense counsel replied that he did not, the military judge disagreed and explained:

[T]he mere fact that he may have entered the victim's room with a view toward merely checking on her comfort and then when calling her name, she beckoning him to her bed *in her sleep* and then he engaging in the acts which he testified to and then getting ready to commence with the actual sexual intercourse *when she awoke* and stopped him immediately ... he may have been able to have a mistaken belief that he had the consent of the victim.... (Emphasis added).

Subsequently, the defense counsel changed his position and specifically requested a mistake of fact instruction. We would note, however, that neither the presence or absence of a request by the defense counsel, nor the military judge's assessment of the relative merits of the affirmative defense, is determinative.

■ Once a determination is made that the issue of mistake of fact was reasonably raised by the evidence as to the offense of rape, the military judge had a duty to instruct *sua sponte* thereon. *United States v. Taylor, supra.* The Government's assertion to the contrary, in reliance on the waiver language of R.C.M. 920(f), has been specifically rejected by the Court of Military Appeals. *See generally United States v. Taylor, supra,* at 128–129; R.C. M. 916(j), 920(e)(3), and 920(f).

■ As regards the offense of burglary (and its lesser included offenses), on the other hand, our reading of the record leads us to conclude that the affirmative defense of mistake of fact was *not* reasonably raised by the evidence, notwithstanding the military judge's apparent finding to the contrary. As with the rape charge, the contentious issue here was consent; in this instance, consent to enter Sgt M's room. However, as described above, the evidence relating to that offense simply presented an issue of credibility, not one of mistake. The words of invitation (i.e., consent), as related by appellant, were clear and unequivocal. Sgt M flatly denies that any

such words were spoken by her. There is no indication in the testimony of the parties that words or actions may have been misconstrued. Nor do we believe that Dr Schmidt's testimony concerning the effects of alcohol on memory opens this particular door. There is no indication that Sgt M's level of intoxication may have caused her to extend such invitations, in a conscious state, and later remember a completely different tenor to her interaction with appellant.

Thus, as to the burglary charge and its lesser included offenses, we find that no instruction on mistake of fact was required. Although mindful that the giving of an unnecessary mistake of fact instruction can, under certain circumstances, actually prejudice an accused (*see United States v. Tucker,* 14 U.S.C.M.A. 376, 34 C.M.R. 156 (C.M.A.1964)), we do not find that to be the case here. Under the circumstances of this case, the instruction was a gratuity, which could only have benefited appellant. *See United States v. Keeve,* 2 M.J. 290 (A.F.C.M.R.1976), *rev'd on other grounds,* 5 M.J. 396 (C.M.A.1978). In reaching this conclusion, we have carefully considered the imperfect contents and delivery of the instruction as given.

Having determined that the issue of mistake of fact was reasonably raised as to the rape charge, we have remaining before us the alleged inadequacy of the instruction given by the military judge as to that charge and the assertion that the military judge erred by failing to instruct on the different standard applicable to the lesser included offense of attempted rape. Finding merit in the latter contention, we need not tarry over the former.

■ Although rape is a general intent offense (*United States v. Hickson,* 22 M.J. 146, 150 (C.M.A.1986)), the lesser included offense of attempted rape is a specific intent offense. The military judge correctly instructed the members that, in order to find appellant guilty of attempted rape, they must find beyond a reasonable doubt that "the act was done with the specific intent to commit the offense of rape" and that at the time of the act "the accused

748

intended *every* element of rape." (Emphasis added); *See* MCM, Part IV, paragraphs 4 b(2) and 4 c(1) (1984); Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, para. 3–2b (May 1982). We are not faced with the somewhat unusual situation, as this Court was in *Keeve, supra*, where the offense is a specific intent offense but the mistake of fact relates only to a general intent element thereof. Here, clearly, the mistake of fact as to consent goes directly to an element requiring specific intent.

Thus, appellant was entitled to an instruction detailing the standard applicable to mistake of fact in specific intent situations, i.e., an instruction that appellant's mistake of fact, in order to serve as a defense to attempted rape, need only be honest, not honest and reasonable. *United States v. Holder,* 7 U.S.C.M.A. 213, 22 C.M.R. 3 (1956); *United States v. Sicley,* 6 U.S.C.M.A. 402, 20 C.M.R. 118 (1955); *United States v. Rowan,* 4 U.S.C.M.A. 430, 16 C.M.R. 4 (1954). Instead, the court members were instructed to apply the "honest and reasonable" standard to all of the offenses before them. This was error. As applied to the lesser included offense of attempted rape, this standard was incorrect and could conceivably have resulted in distinct prejudice to appellant.

Accordingly, the findings of guilty of Charge I and its specification (attempted rape) are set aside. The remaining findings of guilty as to Charge II and its specification (unlawful entry) are affirmed. The sentence is set aside. A rehearing on Charge I and its specification, and on the sentence, may be ordered. If a rehearing on Charge I is impractical, that charge may be dismissed and a rehearing ordered on sentence alone.

Chief Judge HODGSON and Judge HOLTE concur.